Pierce *v.* Gibson County.

---

. PIERCE *v.* GIBSON COUNTY.

(*Jackson.*    June 8, 1901.)

1. INJUNCTION.    *Against creation of nuisance by county.*

Injunction lies to prevent the construction and operation by a county of a sewer system, for the purpose and with the effect of conveying from its court house and discharging upon private property the filth and excrement deposited in the public urinals and water closets, where it appears beyond reasonable doubt that there is real and immediate danger that material and irreparable injury will be thereby inflicted upon the property owner affected.

Cases cited: Kirkman *v.* Handy. 11 Hum.. 406; Vaughn *v.* Law, 1 Hum., 134; Brew *v.* Van Deman, 6 Heis., 433; Weakley *v.* Page, 102 Tenn., 179.

2. COUNTY.    *Has no power to create nuisance.*

The exemption against judicial interference and control ordinarily accorded to counties in the exercise of governmental powers and discretion, cannot be invoked to protect a county in such exercise of its powers and discretion, even for a public purpose, as creates, or threatens to create, a nuisance injurious to the citizen.

Cases cited: Horton *v.* Nashville, 4 Lea, 37; Chattanooga *v.* Reid, 103 Tenn., 616.

---

FROM   GIBSON.

---

.

Appeal from Chancery Court of Gibson County. JOHN S. COOPER, Judge.

WALKER & HUNT for Pierce.

TAYLOR & BIGGS for Gibson County.

Pierce *v.* Gibson County.

McALISTER, J.    At the date of the filing of the bill herein and prior thereto, Gibson County had in course of construction a court house building in the town of Trenton, Tenn., in which building provision had been made for six water closets and urinals, to be connected with the sewer pipe which the building commissioners of said new court house were proceeding to lay down.    The avowed intention of the committee in putting in the sewer, was to attach the court house closets to it, and, incidentally, they had arranged to connect the closets of the county jail and those of E. F. Watson Machine Shops to this sewer. The pipe for this sewer was ready for being put in, and part of it laid when complainants filed their bill in this cause.

The ditch in question is not a running stream, and only flows in times of rains and high waters. The sewage from the new court house building and from said water closets and urinals was intended to be conveyed through said sewer pipe and dry ditch and emptied upon the lands of complainants.    It further appears that complainants are butchers and vendors of fresh meats, conducting a large business and using said lands for pasturing their cattle, sheep, hogs and goats, kept by them for butchering purposes.    Their slaughter pens and houses were also situated on said lands.

On the 24th of November, 1899, complainants filed this bill to enjoin the building commissioners of the county from connecting the water closets and urinals

23 P—15

of the new court house with said sewer pipes, alleging that if the sewage from the said court house be conveyed through said sewer and emptied at said point that it will create a public nuisance, and especially a nuisance to complainants, doing them irreparable injury; that the filth would be washed down, through the open ditch, upon complainants' lands, injuring their business, destroying their health, and diseasing their cattle.

A temporary injunction issued upon the fiat of the Chancellor. Answers were filed and proof was taken. On the hearing the Chancellor decreed that the injunction theretofore issued, enjoining the defendant, Gibson County, its agents and officers, from in any way connecting the water closets of the court house with the sewer pipe, and from emptying the sewage from the court house by means of same to said open ditch, and there emptying same, be made perpetual. The injunction was so far modified as to permit the work to be completed for the purpose of draining the basement of the court house.

Defendants appealed, and the first error assigned is that the suit was prematurely brought and should have been dismissed. The insistence is that no cause of action existed at the date of the commencement of the suit, since the court house was unfinished and there were no water closets as yet built. It is said further that there was no order by the County Court for the sewerage to be constructed for the water closets, nor had the Building

Committee taken any action in regard to sewerage for the closets. Defendants insist that the object of the Building Commissioners in laying the sewer pipe was to drain the water from the basement of the new court house.

It is said that on November 23, 1899, the date of the filing of this bill, the walls had been about finished, but the building had not been covered, and to prevent the rain water from accumulating in the basement and injuring the work already done, the Quarterly County Court, on October 3, 1899, passed the following order: "Ordered by the County Court that the Court House Building Committee be, and they are hereby, instructed to take such steps as they may think best in regard to the protection of the basement of the new court house."

It is insisted that, acting under this order, the committee awarded a contract for a drain pipe, to convey the water from the basement of the court house building to a point near the northeastern boundary of the town, where it was to empty into a ditch. It is further said that this was the natural outlet for the water for the entire central and northeastern portions of the town, including the court square and the court house building, and had been used as such since the building of the town. The Chancellor, as already stated, modified the injunction, so as to permit the completion of the sewer and its use as a means of draining the water from the basement of the court house. But defend-

ants are not satisfied with this modification of the injunction, but have appealed from the decree of the Chancellor, denying them the right to connect the water closets and urinals of the new court house with this sewer pipe.

The two positions assumed by defendants are somewhat inconsistent. But, upon a review of the testimony, we agree with the Chancellor, that defendants, at the date the bill was filed, were making provision to convey and empty the sewage from said water closets and urinals, and that it was the purpose of the defendants to connect the water closets of the court house with said sewer pipe. But it is argued that if the sewer is used for the purpose of discharging the sewage from the court house, it does not follow that it would create a nuisance; that a sewer is not a nuisance *per se*, and there is no presumption it will become a nuisance.

The case of *Kirkman* v. *Handy*, 11 Hum., 406, is cited, in which a bill was filed to restrain the defendant from proceeding to erect a livery stable in the city of Nashville, upon the ground that such stable would be a nuisance to the neighborhood "by reason of the filth, flies, persons, carriages, and animals that will gather about it, and that it will diminish the increase of complainant's property one-half and change the character of his tenants."

The Court held that a livery stable in a town is not necessarily a nuisance in itself, and that a Court of equity has no jurisdiction to restrain by injunc-

tion, either the completion of a. building intended for that purpose, nor its appropriation to the use intended. But in the course of its opinion the Court said, viz.: "In regard to private nuisances, the jurisdiction of courts. of equity to interfere by way of injunction rests upon the ground of pre-venting irreparable mischief or multiplicity of suits . . . Where the injury is irreparable, as where the loss of health, loss of trade, destruction of the means of subsistence, or permanent ruin to property, may or will ensue from the wrongful erection, in every such case courts of equity will interfere by injunction to prevent, as well as to remedy, the evil, citing 2 Story's Equity, Sec. 926. So in *Brew* v. *Van Deman*, 6 Heis., 433, it was held that a Court of equity has jurisdiction upon the ground of its ability to give a more complete and perfect remedy than is attainable at law to prevent by injunction such nuisances as are threatened, as well as to abate those already existing. The grounds of jurisdiction are the restraining of irreparable mischief, suppressing oppressive, and interminable litigation, or preventing multiplicity of suits, or where the mischief from its continuance or permanent character must occasion a constantly recurring grievance, which cannot be prevented otherwise than by injunction." See, also, *Vaughn* v. *Lane*, 1 Hum., 134, and *Weakley* v. *Page*, 18 Pickle, 179.

Says Mr. Beach, in his work on Modern Equity Jurisprudence, Vol. 2, Sec. 741, viz.: "An injunc-

tion will lie to prevent a nuisance threatened, or in progress, as well as to abate one already in existence (citing many cases). But if a nuisance be merely apprehended, it must appear that apprehension of material and irreparable injury is well grounded upon a state of facts which shows the danger to be real and immediate. . If the injury is doubtful, eventual, or contingent, an injunction will not be granted, and if it is fully denied by the answer, or if upon the facts there is a reasonable doubt of the effect of its erection, the injunction will be denied until the question of nuisance is determined by the actual use of the property . . . The Courts will not indulge in conjecture, that the manner in which a proposed erection will be conducted will prove a nuisance, and upon such imaginary fear or uncertain apprehension of speculative or contingent injuries, stop the erection of a public necessity. The fact that the work sought to be enjoined is one of a public nature, one which affects the public convenience, and that there is no doubt of the ability of the defendant to respond in damages, are important matters to be considered in determining the right to an injunction. When the injury is merely threatened, the rule is, if the act complained of is not a nuisance *per se*, but may or may not become so, according to circumstances, and the injurious effect is uncertain or contingent, equity will not interfere until the question is settled at law, or an issue directed by the Court."

Pierce *v.* Gibson County.

In the case of *Missouri* v. *Illinois*, decided by the United States Supreme Court, January 28, 1901, it was held that the threatened daily transportation by the Sanitary District of Chicago, by artificial means and through an unnatural channel, of large quantities of sewage and of accumulated deposits, which will poison the water supply of the inhabitants of the State of Missouri, and injuriously affect that portion of the bed or soil of the Mississippi river which lies within its territory, entitles that State to maintain a suit for equitable relief in advance of any actual injury sustained thereby.

In that case it was argued that the draining, by artificial means, of the sewage of the city of Chicago into the Mississippi river, may or may not become a nuisance to the whole State, cities, and towns of Missouri; that the injuries apprehended are merely eventual or contingent, and may, in fact, never be inflicted. Said the Court: "Can it be gravely contended that there are no preventive remedies by way of injunction, or otherwise, against injuries not inflicted or experienced, but which would appear to be the natural result of acts of defendant, which he admits or avows it to be his intention to commit?"

The Court, in answering this question, cites a large number of cases, English and American, sustaining the jurisdiction of courts of equity to grant such relief.

We think these principles are applicable in the present case. It is charged in the bill, and such is the proof, that it was the purpose of defendants in constructing this sewer to empty and discharge upon complainants' lands the privy excrement and sewage from the water closets of the court house. Surely complainants cannot be asked to wait until the injury is inflicted before invoking the aid of a court of equity. If the danger is threatened and impending, a party has a right to a preventive remedy.

In *Wiley* v. *A. Hearn* (Ky.), 18 S. E. Rep., 529, an injunction was asked to prevent an adjoining landowner from building a privy in close proximity to plaintiff's house and well. The Court held, viz.: "It is said herein that the privy has never been used, the appellee has never yet suffered any injury, and that as it is shown it is possible to prevent leakage, and the omission of bad odors, therefore the appellee cannot resort to the process of injunction. A party is not required, however, to wait until the injury is inflicted. The object of the writ is preventive. Like the interdict of the civil war, it wards off the injury. It is true it cannot be called into exercise unless the right of the party invoking it be certain and a necessity exists for its aid; in other words, the case must be a clear one. But this does not mean there must be an absolute certainty of its need. If so, it could rarely be invoked. It is true the party cannot act upon a

mere fear or apprehension, a mere possibility, or threatened injury, but if the damage be probable and threatening, he may invoke its aid, and need not delay until the injury is actually inflicted.''

Lastly, it is insisted on behalf of appellants that the location and construction of the sewer was the exercise by the county of a governmental power, and the discretion committed to it cannot be controlled by the Courts, unless a clear abuse of its power be shown. It is true, as argued, that the necessity for a sewer, its location and general plan, are matters which involve the exercise of discretion, and ordinarily the Courts will not interfere. *Horton* v. *Nashville*, 4 Lea, 37; *Chattanooga* v. *Reid*, 19 Pickle, 616.

But it is well settled that a municipality or county, in the construction of a public work, is not privileged to commit a nuisance, to the special injury of the citizens, and for such act is liable as a private individual in damages, or it may be restrained by the writ of injunction. *Chattanooga* v. *Dowling*, 17 Pick., 345, and authorities there cited; *Atlanta* v. *Warnock*, 23 L. R. A., 301, and note.

In the last case it was held that the municipal government of Atlanta, though invested by statute with plenary power on the subject of streets, sewers, etc., has no right to create ' and permanently maintain a nuisance dangerous to health and life, which nuisance consists of ''man holes'' in a sewer located in a public street contiguous to the dwelling of a citizen,

the man holes being allowed to emit poisonous gases in large quantities through perforated covers placed over them.

While we entertain these views touching the law governing this case, we are nevertheless of opinion that the scope of the injunction granted was too broad. All that complainants had a right to demand was that the sewage from the court house should not be emptied upon their land; but the Chancellor went so far as to enjoin the county from even connecting the water closets of the court house with the new sewer. If the county should be able to change the route of said sewer and find another outlet and divert its channel from complainants' lands it should have the right to connect its water closets with said sewer, and complainant could not complain. It is, therefore, ordered by this Court that said injunction be so modified as to permit the county to connect the water closets and urinals of the court house with said sewer, provided the contents of said sewer are not discharged upon complainants' lands. With this modification of the injunction, the decree of the Chancellor is affirmed.