SHELBY COUNTY, Plaintiff in Error, v. W. F. DODSON, et al., Defendants in Error.

Western Section.  December 17, 1930.

Petition for Certiorari denied by Supreme Court, May 2, 1931.

L. D. Bejach and J. W. Canada, both of Memphis, for plaintiff in error.

L. E. Farley, and Wilson, Gates & Armstrong, all of Memphis, for defendant in error.

SENTER, J.  For convenience the parties will be referred to as in the court below, W. F. Dodson, et al., plaintiff, and Shelby County, defendant.

This is an appeal from the judgment of the Circuit Court of Shelby County, in favor of plaintiff and against the defendant for the sum of $5500, and the cost of the suit.

Plaintiff sued the defendant for damages alleged to have resulted to property owned by the plaintiff by reason of the changing of the grade of the road or street which ran along by this property and upon which the same abutted for a distance of 305 feet; and by reason of the erection and construction of a high viaduct crossing the St. Louis, San Francisco Railway near the new terminal yards of said railway company; and in causing water to flow over

the property and greatly reducing the value of plaintiff's property. The declaration avers the ownership of the property in the plaintiffs, and the nature and character of the improvements thereon; that this property is located in the environs of the city of Memphis, and just outside of the corporate limits of said city; that prior to the changing of the street grade and the building of the viaduct that this property abutted and fronted for a distance of 305 feet on the public highway known as the Hollyford Road, and also called Otey Street, which road ran along the east side of said property for its entire north and south depth; that said property had been improved by plaintiffs by a valuable store building and residence combined at the corner of said Hollyford Road, and Dunn Avenue; a store house and residence combined at the corner of said Hollyford Road and Fremont Avenue; and that three brick bungalows, or residences, had been built on the property between said store buildings; that the value of said property including the improvements thereon prior to the changing of the grade of the road and the building of the viaduct, was worth $25,000, with approximately $100 per month rentals. The declaration avers that the viaduct constructed by Shelby County elevates the roadway on posts or wood bents from five to twenty feet in height; and also changes the grade of the old road about two feet in front of plaintiffs' property, leaving the portion of the street still remaining higher than the abutting property of plaintiffs, causing water to run over the property, leaving dirt and sediment; and also a large quantity of dust and dirt from the viaduct constructed; and also interferes with and destroys the means of ingress and egress to and from the property; greatly reducing its desirability and value and rentals. Plaintiffs sue for $15,000 damages. The case was tried by a jury in Division Two of the Circuit Court of Shelby County, resulting in a verdict in favor of plaintiffs for the sum of $5,500. A motion for a new trial was made by the defendant and overruled by the court, and judgment rendered on the verdict. A motion in arrest of judgment was also made by the defendant and overruled. From the action of the court in overruling its motions for a new trial, and in arrest of judgment, and rendering judgment against the defendant, the defendant has appealed to this court, and has assigned numerous errors, numbering thirty in all.

Assignments from seventeen to thirty, inclusive, are directed to the action of the court in refusing to give certain special requests in charge to the jury tendered by the defendant. Assignments seven to seventeen are directed to certain portions of the general charge. Assignments Nos. 1, 2 and 3 are directed to the action of the court in overruling defendant's motion for a directed verdict at the con-

clusion of plaintiffs' proof and renewed at the conclusion of all the evidence. The fourth assignment alleges error by the trial judge in overruling defendant's motion to withdraw from the jury all evidence of inconvenience during the time of the construction of the viaduct in front of plaintiffs' property, which motion was made at the conclusion of all the evidence in this case. The fifth assignment is to the action of the court in overruling defendant's motion made at the conclusion of all the evidence to withdraw from the jury all evidence with reference to certain allegations contained in the declaration. The sixth assignment is directed to the action of the court in overruling defendant's motion in arrest of judgment made by the defendant after the court had overruled its motion for a new trial.

Obviously it is neither practical nor necessary that each of these thirty assignments be separately considered and disposed of. Appellant states in his brief that he deems it unnecessary to take up each of these assignments and discuss them separately and in detail, and deems it sufficient to divide the assignments of error into two groups; first, those assignments of error, the sustaining of which will entitle appellant to a judgment of dismissal; second, those assignments of error, the sustaining of which will merely entitle appellant to a remand of the cause for further proceedings in the lower court, and then adds that assignments 1, 2, 3, 4, 19, 24, 26, 27, and 28, may be classified under the first group, going to the first proposition, i. e., that the suit should be dismissed, and assignments 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23, 25, 29 and thirty, in the second group, i. e., the judgment should be reversed and remanded for a new trial.

Under the first group it is the contention of appellant that plaintiffs are not entitled to any recovery in this cause because there is no statute or constitutional provision authorizing the suit filed against Shelby County in this cause. It is urged that the case of Wood v. Tipton County, 66 Tenn., 112, and the principles therein laid down support the contention of appellant that a county cannot be held liable for damages sustained to property unless there has been an actual taking of property for public use. The Wood case was a suit for damages resulting to a mule because of the failure of the county to keep a bridge in repair. A demurrer to the declaration was sustained on the ground that Tipton County is not such a corporation as can be made liable by law for damages for injuries caused by reason of a public bridge being out of repair. In that case the court said:

"Within their prescribed spheres the counties legislate for the public good, in respect to ordering the laying out of roads, building bridges, and such other local improvements as are for

the public benefit, and authorized by law. They are no more liable to be sued for neglect of duty of its officers than is the state for similar neglect of duty by its officers. The common law gives no such action, and it is therefore not sustainable at all, unless given by the statute. . . . We have no statute subjecting counties to suits for damages arising from neglect of the county officers. The county is declared to be a corporation to facilitate the execution of the powers delegated to it as a local legislature, and to enable it to make binding contracts and to be liable for suit for just claims arising under such contracts. But this is the extent to which, as corporations, counties can be sued.''

Upon the strength of this holding, and especially the language of the court, ''. . . and to enable it to make binding contracts, and to be liable to suit for just claims arising under such contracts. But this is the extent to which, as corporations, counties can be sued,'' appellant bases the contention that the nature and character of the alleged damages sustained by plaintiff in the instant suit not growing out of a contract, and the action being in the nature of an action ex delicto, a county cannot be held liable.

In further support of this contention appellant cites and relies upon White's Creek Turnpike Co. v. Davidson County, 82 Tenn., 73; McAndrews v. Hamilton County, 105 Tenn., 399; Rhea County v. Sneed, 105 Tenn., 581; Carothers v. Shelby County, 148 Tenn., 187, and Vance v. Shelby County, 152 Tenn., 141.

White's Creek Turnpike Co. v. Davidson County, was a suit by the Turnpike Company against the county for damages alleging to have resulted in laying off a public road, which was declared by the court to be a shun pike and a nuisance to the plaintiff's rights. In that case the court said:

''It is well settled, and is conceded by the learned counsel of the plaintiff, that municipal corporations of the character of our counties are not liable in a private action, at the suit of a party injured by a neglect of its officers to perform a corporate duty, unless such action is given by statute. This doctrine has been frequently applied where suits have been brought against towns or counties to recover for damages sustained in consequence of defects in the public ways. The common law gives no such action, and it is therefore not sustainable at all, unless given by statute.''

In that case it was the contention of plaintiff that the action could be maintained under Code Section 403. The court states on that subject as follows:

''The previous section makes every county a corporation.

Sec. 403 is: 'Suits may be maintained against a county for any just claim as against other corporations; and process shall be served on the presiding officer of the county court.' The argument is that this section not only prescribed a remedy, but creates liabilities on the part of the county where no liability existed before. Counties in this state have always been held to be public municipal corporations with limited powers, and liable as such. The doubt had been as to the mode of bringing the suit and serving the process. The common plan was to sue the justices composing the county court, and serving process on each one of them, a combrous and expensive mode. . . . In this situation of affairs the legislature passed the Act of 1857, Chapter 15. This Act provides in substance that when any person may have 'any just claim' either legal or equitable, against a county, he might institute his suit against the county, at law or in equity, 'under the same rules and regulations that govern actions between private individuals,' the process to be served on the presiding officer of the county court. The sole object of the Act was to simplify the remedy without affecting the liability of the county. . . ."

The case of McAndrews v. Hamilton County involved the question as to whether the county could be held liable for the negligent discharge of duty by one of its employees engaged in the service of one of its public institutions. The contention in that case was that the statute authorized the county to maintain the institution, but left it optional with the county as to whether it would establish and maintain the institution, but where the county did maintain the institution, under its statutory authority, it became liable for personal injuries sustained by the negligent acts of one of its employees. The court held that the Act authorizing the maintenance of the institution did not make it liable for personal injuries sustained by one on account of the negligent act of its employee.

The case of Rhea County v. Sneed simply holds that the law does not imply a contract on the part of the county to pay laborers employed in the construction of a public bridge, where the county commissioners let the contract for the building of the bridge to a construction company at a stipulated price, and that company and its subcontractors employed such laborers. It was held that the county was not liable because of the negligent failure of the commissioners to take the contractor's bond as required by the Act of 1899 on the subject.

The case of Carothers v. Shelby County, was a suit to recover damages for the death of one resulting from the breaking down of a bridge on a county highway under the weight of a truck in which

deceased was riding. The court held in that case that the county was not liable, citing numerous Tennessee cases in support.

The case of Vance v. Shelby County is also a case in which it was held that the county could not be held liable for personal injuries sustained resulting from the failure of its county officers to erect barriers or to place lights warning persons using the highway where a bridge had been removed, and no warning to users of the roadway that the bridge had been torn down for the purpose of building a new bridge.

It will thus be seen that in these several cases cited and relied upon by appellant the actions were for damages growing out of torts, either the act of omission or commission upon the part of county authorities.

However, in the case of Chandler v. Davidson County, a recovery was had against the county for damages for personal injuries sustained, where in the progress of constructing or repairing a road, a ditch or excavation was made, which was about 9 feet in length and four feet wide and three and one-half feet deep. This excavation was in front of the entrance of a home near the city of Nashville. The excavation had remained unguarded for some time. In that case the court held that the digging of this ditch and leaving it in that condition for some time immediately in front of the home where the injured person was a guest, constituted a nuisance and for which the county would be liable. It would appear that the holding in that case is in conflict with the holding in other cases by the Supreme Court of this state. However, upon an analysis of the case we find that the court drew a very clear and well defined distinction. After reviewing many former decisions by the Supreme Court, including those hereinbefore referred to, the court says:

> "It was generally considered by the courts and the profession that the citizen had no remedy against the county for any injury caused by the neglect of the county to keep the public road in good repair. (Citing numerous Tennessee cases.) These cases all hold that the county is not liable in tort for negligence of its agents in the discharge of their public duties upon the thought that there is no statute making it so liable, and the liability does not exist at common law, because of the limited nature of the corporate character of the county. It is not a general corporation, and is not organized for the purpose of exercising fully the functions of government. Its governmental capacity is much limited and it exercises such powers of government as it has by virtue of the statute.

> "But such is not the question involved herein. Its non-liability for misfeasance of its agents is conceded by plaintiff,

but it is insisted that the county as a legal entity endowed by the legislature with power to build roads, is not authorized to commit a nuisance either public or private. We think this is true, and we also think that the condition created by the construction of the ditch as described herein is a nuisance as it stands. In the case of Pierce v. Gibson County, 107 Tenn., 233, this court said that it was well settled that neither a municipality nor a county, in the construction of a public work, could commit a nuisance to the special injury of its citizens, and for such act is liable as a private individual in damages. This, of course, is common law liability, and is based upon well settled principles of the common law. No individual, natural or legal, has a right to commit a nuisance to the injury of public individuals.''

Appellant refers to the Chandler case, and contends that it is not in line with the former opinions of the Supreme Court, or subsequent opinions of the Supreme Court, and is in conflict with the early case of Wood v. Tipton County, supra, and the numerous decisions following the Wood case. However, Judge Lansden, in the Chandler case points out the distinction in the following language:

"The distinction between the act of the county in failing to keep the roads in proper repair and its act in constructing a new road, or remodeling an old one, so as to create a nuisance, is perfectly plain. In constructing the new road the county acts for the sovereign, for the reason that the state has delegated its sovereignty to the county for the purpose, of constructing the road; but the state has not authorized it to commit a nuisance, because such an act is not an attribute of sovereignty. The sovereign can do no wrong, and it is unthinkable that it would commit or maintain a nuisance. We think this is the theory of the distinction between the two acts. The practical justice of it we think is equally plain. It is not within the power of a citizen to prevent the county from deciding to construct a road at any time or place it may think the public welfare requires it. (Southern Railway v. Memphis, 126 Tenn., 267.) The law would be inadequate in this situation to permit the county to construct the road and hold it immune from responsibility for creating and maintaining a nuisance. It cannot erect a nuisance upon the property of a citizen so as to deprive or repair the use of such property.

"In this case the nuisance consists of the construction and maintenance of the ditch and not of building the pike. Building the pike is one of the corporate functions of defendant, and is authorized by statute. Constructing the ditch so as to

obstruct the ingress and egress of plaintiff to the premises of her host and maintaining the ditch as it was maintained, is the actionable nuisance from which plaintiff has a cause of action.''

Much of the brief of appellant and all of the first group of the assignments of error, and authorities relied upon, present the contention of appellant that the nature and character of the alleged damage to plaintiffs' property is not the result of a taking of the property for public use, and hence the county · cannot be held liable.

We cannot agree to this contention. We are of the opinion that under the facts as disclosed by this record there was actual damage to plaintiffs' property and that the means of ingress and egress to the property has been materially affected by the improvements built by the county in the construction of the viaduct. This viaduct was built partly over the former street or highway. It is true it left a portion of the street in front of plaintiffs' property, but it materially reduced the width of the street at that point. The viaduct as constructed elevated the roadway and was built on wooden bents or piles. It also appears that the grade of the road was changed as the same passed in front of this abutting property, and as a result it caused water to flow over and onto the lots owned by plaintiffs, and deposited sediment. We are of the opinion that when a county exercises its authority to construct highways or to improve highways, or rebuild highways, that results in actual damage to the abutting property, that it constitutes a taking of the property to the extent that it renders the property less desirable and less valuable. We are further of the opinion that to constitute a taking of property it does not become necessary to show that there was property actually taken and appropriated for public use. It is sufficient that if in the course of constructing the new improvement and by which the owner of the abutting property suffers a damage to his property as a direct result of making the public improvement that it constitutes a taking of the property in the sense that the owner is entitled to be compensated by way of damages. We understand this to be the effect of the holding in the cases of Morgan County v. Goans, 138 Tenn., 382; Pierce . v. Gibson County, 107 Tenn., 233; Hamilton County v. Rape, 101 Tenn., 222.

As was stated in the last mentioned case (Hamilton County v. Rape) speaking of the right of the abutting owner in the matter of ingress and egress to his property the court said:

''He has a right of ingress and egress to his property;—or as it is called, an easement of access—and if this is taken away, or if it is impaired or encumbered without his consent,

it is a taking of his property for public purposes for which he is entitled to compensation.''

In the same case the court further states:

"The right of ingress and egress may be valuable or not, and may be of more or less value, according to the property. Thus, in the country districts, when a grade is changed through a man's farm, the right of ingress and egress may, at any particular point, be of little or no value, and for it the abutting owner would be entitled to little or no damages; but, in case of suburban property, a way of ingress and egress to the front of every lot is a matter of importance, and the destruction or impairment of such way is a proper matter for compensation to the extent of the value of the right thus taken away. It is not a question of tort under the pleadings, but of taking a valuable property right without compensation, and the charge is not erroneous. (Gray v. Knoxville, 1 Pick., 101; R. R. v. Bingham, 3 Pick., 526.)

We are therefore of the opinion that the county would be liable in the present case for some amount by way of compensating damages to plaintiff for the impairment of the right of ingress and egress, whether there was left another way by which the property could be reached from another direction. The impairment of the right of way as it existed at the time the improvement began, or rather the impairment of the easement of access would render the county liable for the damages resulting therefrom, since it would be a taking of the property, at least to the extent of the value of the impairment to the right of ingress and egress. It results that the group of assignment of errors, referred to by appellant in his brief as the first group, and upon which he contends that the suit should have been dismissed, or rather that the court should have directed a verdict in favor of the county at the conclusion of all the evidence, and should have sustained the motion of plaintiff made in arrest of judgment, are overruled.

We pass now to the second group of errors assigned, in support of the second proposition of appellant that the case should be reversed and remanded for a new trial, because of the elements of damages alleged to have been erroneously permitted by the court to go to the jury, and the questions made under the second group of the assignment of errors.

We have carefully examined the charge of the court. Under one of the assignments of error it is said that the court permitted the jury to consider damages to one of the lots in the rear of the property fronting on Hollyford Road, and that this was error. The charge to the jury specifically limited the right of recovery to the particular real estate fronting 305 feet on Hollyford Road, and the

court in the charge to the jury, on that subject, stated: "Now, Gentlemen of the jury, in these cases the damages sought are damages to a particular piece of real estate. Since the evidence has come in the damages sought here are of a permanent character and are such damages as only apply to the land described in the declaration, fronting 305 feet on the Hollyford Road, running back between parallel lines 100 feet. In the declaration there is another lot described that is in the rear of this property, but I understand counsel for the plaintiff, in his opening remarks to you, to say that he was not in this case attempting to recover any damages for the lot that was in the rear of the property about which I have just spoken; the property which faces the Hollyford Road 305 feet and runs back between parallel lines, Fremont Avenue on the north and Dunn Avenue on the south, 100 feet, is the property for which damage is claimed."

The court had previously stated in his charge to the jury the issues, and in stating the issues of the suit against the county (there was also a suit against the railroad company heard at the same time and before the same jury by the same plaintiff) the court reviews the averments in the declaration. The court then says: "Now, Gentlemen of the jury, cutting down from what I have read to you as contained in the two declarations filed by the plaintiff in this law suit or these law suits: In the first one the plaintiff alleges that the defendant, Shelby County, has changed the grade of the road on the east of his property and that as a result of the change of that grade that the ingress and egress to his property has been destroyed or has been impaired and he says that since that has been done that that amounts to a taking of his property and that as a result of the taking he has been damaged."

The court then refers to the suit against the railroad company and the allegations in the declaration in that suit with reference to the operation of the railroad yards so as to constitute a nuisance, of course that has nothing to do with the present suit. The court then charges the jury upon the question of the burden of proof; and also the weight to be given to the evidence of the witnesses, and instructs the jury on those matters. The court then proceeds to say: "I have stated to you that these are cases for damages to the real estate. Hence, since it is that kind of a law suit in both cases, it is not a law suit to recover for personal annoyance, damage to feelings. Now take the first suit. That is a suit in which the plaintiff says that the county has changed the grade in front of the property and that by reason of the change of that grade the ingress and egress to the property has been impaired or destroyed; and as a result of that, the land has been permanently damaged.

That is asserted by the plaintiff. It is denied by the defendant under the plea of not guilty.

"Now, the law is upon that question—and it is your duty to take the law from the court regardless of what counsel reads you as the law from law books;—the law in Tennessee is that if Shelby County changes the grade or did change the grade in front of Mr. Dodson's property, and that the change of that grade has impaired or destroyed the ingress or egress to his property, then Shelby County would be liable. If, however, under the facts, the defendant, Shelby County, did not change that grade; or even if they changed the grade, and if you find that the ingress or egress to the plaintiffs' property was not impaired or destroyed, then in either of those events, the defendant, Shelby County, would not be liable."

However, by certain assignments of error it is said that the court did not limit the right of recovery to the damage resulting from the impairment of the way of access to plaintiffs' property because of the changing of the grade, but that because of other statements made by the court in the course of his charge, he in effect instructed the jury to consider all damages resulting to plaintiffs' property in stating the measure of damages. The court after instructing the jury as above set forth, then proceeds to say: "Having passed that question, the next question is, if they are liable what is the amount of the damages?

"Now I don't want you gentlemen to get away from this cardinal rule of measuring the damages; the damage would be the difference between the fair, cash market value of the property before the grade was changed, and immediately thereafter at the completion of the change of the grade. What would be the difference in the fair, cash market value and after. Now, that is the rule and you see that it applies simply and alone to the real estate."

This instruction to the jury last quoted immediately follows the statement made to the jury by the court that the damages claimed was for destroying or impairing the right of ingress and egress to the property, and the damage to the property resulting from the impairment of the right of egress and ingress. This last instruction to the jury when considered in connection with the previous statement made by the court to the jury, and in considering that there was much evidence with reference to the water flowing across the lots because of the changed grade, and the obstruction to the view because of the elevated viaduct built on piling, etc., would seem to be that the court wanted to impress the jury that no recovery could be had on account of increased annoyances in the way of noises and discomforts from dust, etc., but that the recovery should be limited solely and alone to the damage to the real estate result-

ing from changing the grade of the road and impairing thereby the means of ingress and egress.

Taking the charge as a whole we find that it is very complete and very full. The learned trial judge seemed to be of the impression that the only recovery that could be given to plaintiff would be by way of compensating plaintiff for the damage resulting from the impairment of the right of ingress and egress. We are of the opinion that in thus limiting the right of recovery that the defendant had no good reason to complan. This instruction to the jury does not take into consideration other elements of damage resulting to plaintiffs' property because of the changing of the grade of the street or roadway. There is evidence in the record that because of the change of the grade, and the elevation of the road bed as it passed in front of plaintiffs' property, it caused water to run over and across the lots depositing sediment and trash. We are inclined to the opinion that that character of damage, water flowing across a lot, etc., after the raising of the grade, would also be such a damage as would be in the nature of the taking of property, and for which plaintiff could recover as well as for the impairment of the means of ingress and egress..

We have carefully examined all the assignment of errors, including the numerous special requests refused by the court, and we are of the opinion that the general charge fully covered all questions entitled to be submitted to the jury, and that the special requests as tendered were properly refused.

We are further of the opinion that the motion made by the defendant to have the court withdraw from the jury certain evidence was properly overruled. The court took care of all these questions in his charge to the jury, and stated to the jury the elements of damages to be considered, and the way and manner of arriving at the damage. The charge when taken in its entirety limits the right of recovery on the theory of a taking of the property for public use.

On the question as to the value and the amount of damages recoverable, we find ample evidence to support the verdict of the jury. We have not attempted in this opinion to separately discuss each of the several assignment of errors, but we have considered all of the errors assigned. As before stated, we are of the opinion that the county is liable to plaintiffs, and that the character of damage sustained by this property comes within the meaning of the term "taking private property for public use," and for which plaintiffs, as owners of the property, are entitled to be compensated. We think these issues were fairly submitted to the jury, and that the verdict of the jury is supported by material evidence.

It results that all assignments of errors are overruled and the judgment of the lower court is affirmed. The cost of this appeal will be paid by appellant and sureties on the appeal bond.

Heiskell and Owen, JJ., concur.