16058

YOUNG *et al. v.* BROWN
(46 S. E. (2d) 673)

*Messrs. Royal & Wright* and *Emil T. Cannon,* of Florence, for Appellant,

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, for Respondents,

160

March 11, 1948.

OXNER, Justice: This is an appeal from an order overruling a demurrer to the complaint. A clear summary of the material allegations of the complaint and the grounds of demurrer will be found in the order appealed from, which will be reported. In appellant's brief the questions to be determined on this appeal are stated as follows:

"(1) Is a cemetery a nuisance when located in a residential area, merely because it is a reminder of death and thereby inspires, in some neighbors' minds, 'gloom and depression,' even though it may be so located and operated as not to offend any of their physical senses?

"(2) Is the area involved in the instant case a 'residential area' in the same sense as the area involved in the *Fraser case,* as to which a funeral home was enjoined?"

It is apparently conceded that the first question must be answered in the affirmative if we adhere to our decision in *Fraser et al v. Fred Parker Funeral Home,* 201 S. C. 88, 21 S. E. (2d) 577. Appellant sought and was granted permission to criticize the soundness of the principles adopted by a majority of the Court in the *Fraser case* and has devoted the major portion of his brief to an interesting and able discussion in favor of the view advanced in the dissenting opinions. After mature consideration, we are still of the opinion that this case was properly decided.

The second question seems not to have been considered or passed upon by the Court below and can hardly be said to be included in the grounds upon which appellant demurred. However, both appellant and respondents have argued this question in their briefs and in connection with it the further question as to whether the homes of respondents are situated so as to be affected by the proposed establishment of this cemetery. As these questions have been argued and will again arise when the case is tried, we may appropriately discuss the general principles to be applied in determining whether the establishment and maintenance of a cemetery should be enjointed as a private nuisance.

It is rather generally held in other jurisdictions that the mere presence of a cemetery, unattended by injurious or offensive drainage or fumes, does not constitute a private nuisance because it might be offensive to the esthetic sense of those residing nearby and render a neighborhood less attractive. In 10 Am. Jur., Cemeteries, Section 16, page 498, it is stated: "There is a well-established rule that a cemetery is not a nuisance per se. A place of interment, however, may be a nuisance as a matter of fact, depending on its location, extent and manner of use, including mode of burials. A cemetery does not constitute a nuisance merely because it is a constant reminder of death and has a depressing influence on the minds of persons who observe it, or because it tends to depreciate the value of property in the

neighborhood, or make the vicinity less attractive and is offensive to the esthetic sense of an adjoining proprietor. On the other hand, where the location or maintenance of a cemetery endangers the public health, either by corrupting the surrounding atmosphere, or the water of wells or springs, it constitutes a nuisance." Also, see annotations in 31 L. R. A., N.S., page 945, and 87 A.L.R., page 760, where a number of cases are cited in support of the statement that "the mere proximity to the premises of others does not render a cemetery a nuisance, because of their mental disquietude, superinduced by fixed or recurring reminders of death."

In *Monk v. Packard,* 71 Me. 309, 36 Am. Rep. 315, the court, in concluding that a private burying ground situated near the plaintiff's dwelling did not constitute a private nuisance, observed: "A repository of the bodies of the dead is as yet indispensable, and wherever located, it must ex necessitate be in the vicinity of the private property of someone who might prove its market value injuriously affected thereby * * * The human contents of these graves cannot, as they lie buried there, offend the senses in a legal point of view. The memorial stones alone affect the senses, and the same would result to the superstitious, though nothing human lay beneath them." In *Rea v. Tacoma Mausoleum Association,* 103 Wash. 429, 174 P. 961, 962, 1 A.L.R. 541, the Court, after an extended review of the authorities, said: "No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or other place of sepulture, unattended by injurious or offensive drainage or fumes, sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered."

It is rather interesting to observe that among the courts adhering to the foregoing views and refusing to enjoin the establishment and maintenance of a cemetery on account of its close proximity to a residence are some that take a dif-

ferent view as to a funeral home and enjoin its establishment
and operation in a strictly residential section. To illustrate:
In *McGowan et al. v. May,* 186 Ga. 79, 196 S. E. 705, the
Supreme Court of Georgia sustained an injunction against
the threatened establishment of an undertaking business in
a residential neighborhood. The same Court, in *Harper et al.
v. City of Nashville et al.,* 136 Ga. 141, 70 S. E. 1102, 1103,
refused under similar circumstances to enjoin the establish-
ment and location of a cemetery. It was there stated: "Ceme-
teries are a necessity. A place where the dead may be given
decent Christian burial must be established, and the location
of such must necessarily be upon some tract of land more or
less suitable and commodious; and it is impossible to find a
tract of land that is not contiguous to the lands of someone
else. And inasmuch as cemeteries must be established, and
should be located where they are reasonably accessible, it is
rarely possible to so fix their location, when they are designed
for the use of a populous town or city, where they will not
be in more or less proximity to some residence; and unless
the soil of the land used as a cemetery and that of the conti-
guous owners is such as to cause a drainage which will pro-
duce a contamination of the waters, thereby putting in jeo-
pardy the health or lives of the owners of the contiguous
lands and the health of their families, or unless the air would
be contaminated, courts of equity will not interfere by the
grant of injunctive relief to prevent the establishment and
location of the cemetery. Cemeteries are not per se nui-
sances, and it is only in exceptional cases that their establish-
ment and location would be enjoined by a court of equity."
Also, see *Hallman et al. v. Atlanta Child's Home et al.,* 161
Ga. 247, 130 S. E. 814, where the *Harper case* was followed
and the foregoing language quoted with approval.

The question of whether the establishment and mainten-
ance of a cemetery in close proximity to a residence may be
enjoined as a private nuisance appears to be one of first im-
pression in this State. In *City Council of Charleston v. Went-*

*worth Street Baptist Church,* 4 Strob. 306, the Court upheld the validity of an ordinance prohibiting the establishment of any new burial grounds within the City of Charleston. In denying the claim of the landowner that he was entitled to use his land for any lawful purpose, the Court said: "Shall the owner of a city lot be upheld, by the court, in his appeal to vindicate his absolute dominion in the soil, and his right to use it as he pleases? Such a claim would equal, in intensity of selfishness, the example put by Lord Bacon, of the man who would set his neighbor's house a-fire to roast his egg." In this connection, we may further digress by stating that statutes have been passed in some States restricting the location of cemeteries and prohibiting their establishment within a certain distance of a dwelling without the consent of the owner. 14 C. J. S., cemeteries, § 16.

In determining whether an establishment or business should be declared a private nuisance, due regard must be had to the correlative rights of the parties— the right of one generally to make such lawful use of his property as he may desire and the right of the other to be protected in the reasonable enjoyment of his property. The courts have encountered great difficulty in undertaking to harmonize these rights. Necessarily there must be some element of compromise. Then, too, regard must be had to the interest of the public. In the evolution of the law of nuisance, elements are now considered which were not recognized at common law. Many things now uniformly held to be nuisances would not have been so classified under the definition given by Blackstone. The older authorities emphasized the right of the property owner to use his property for any lawful purpose but the trend of modern authority is to give more consideration than formerly to the right of the owner to the reasonable and comfortable enjoyment of his property. And comfortable enjoyment means mental as well as physical comfort. Nuisance is a question of degree depending upon varying circumstances. Resort must always be had to sound

common sense and due regard should be given to the notions of comfort and convenience entertained by persons generally of ordinary tastes and susceptibilities. A lawful business should not be enjoined on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over-sensitive person, but on the other hand no one, whatever his circumstances or condition may be, should be compelled to leave his home or live in mental discomfort, although caused by a lawful and useful business carried on in his vicinity. Emotions caused by the constant reminder of death may be just as acute in their painfulness as suffering perceived through the senses.

Applying the foregoing principles to the question before us, we think that the maintenance of a cemetery may under certain circumstances constitute a private nuisance even though not detrimental to the health or offensive to the physical senses of those living nearby. It may be readily conceded that the mere fact that a body is buried near a residence is not reasonably calculated to cause a depressed feeling or affect the cheer and happiness of the home and we may assume, without deciding that the constant view of markers or tombstones over the graves would probably not produce a depressing effect upon the mind of the average person, but these are not the only incidents connected with a cemetery. There is the passage of the funeral procession with its mourners and the last rites at the grave followed by frequent visits of the bereaved persons, all of which are conducive to depression and sorrow and when constantly recurring in close proximity to a residence may deprive the home of the comfort and repose to which the owner is entitled. Proper respect for the dead and those in grief and sorrow naturally imposes a restraint at such times on the usual laughter and play of children and social and family gatherings could not be held under cheerful surroundings. The foregoing circumstances may not affect the comfort and repose of the home to the same degree as a funeral home adjacent to or across the

street from a residence but there do exist in connection with a cemetery many of the considerations which have prompted the courts to declare a funeral home a private nuisance.

It does not follow from these observations that every home owner in a residential area is entitled to complain of the establishment of a cemetery in his vicinity. As stated in one of the concurring opinions in the *Fraser case* (201 S. C. 88, 21 S. E. (2d) 577, 585), in a discussion of a funeral home, "Cases may arise in a residential area where those complaining are so far removed that they could not reasonably be said to be affected." Consideration must also be given to the relative size of a cemetery and the frequency of burials therein. One who lives close to a small cemetery in a rural community where there is only an occasional burial would not be affected to the same extent as one living adjacent to the entrance of a cemetery serving a large metropolitan area where funerals are almost daily occurrences. Regardless of how much one may be affected by the location of a cemetery near his home, a cemetery is, as pointed out in some of the cases, a necessity. It must be located adjoining the property of someone and be reasonably accessible to the community which it serves. The area around a large city may be so thickly populated that the only location available is in a more or less residential section. Under these circumstances, private convenience must yield to the convenience of the public. At one time cemeteries were usually established and maintained by municipalities or other units of government. It is common knowledge that they are now frequently established and maintained by private interests for commercial gain and it is rarely necessary for their intrusion into an exclusively residential section. It is needless to add that one is not in a position to complain who builds or buys a home near a cemetery already established. All of the foregoing circumstances and perhaps others must be considered in determining whether the establishment and maintenance of a cemetery would constitute a private nuisance. It

is generally recognized that it would be difficult, if not impossible, for the courts to state any fixed or arbitrary rule governing cases of this kind. Each case must be determined by the facts and circumstances developed therein. This was the final conclusion reached by a majority of the Court in the *Fraser case* involving the establishment of a funeral home in a residential section.

We shall now briefly consider the decisions from other jurisdictions heretofore mentioned. Some of these cases involved the enlargement of a previously established cemetery and for this and other reasons may be distinguished from the instant case on the facts. A number of them were decided years ago and in jurisdictions which denied injunctive relief unless the alleged nuisance was detrimental to the health or offensive to the physical senses of those complaining—a view which was rejected by us in the *Fraser case*. The rule laid down in some of these decisions is, in our opinion, too rigid and would, if literally applied, under some circumstances deprive the home owner of the peace, comfort and repose to which he is entitled.

In the instant case, all the facts stated in the complaint must be regarded as admitted for the purpose of considering the demurrer and the complaint must be given a liberal construction. We think enough is alleged to justify overruling the demurrer. Nothing contained herein shall be construed as any intimation of opinion upon the merits. The case must be determined on the facts developed from the testimony.

For the reasons stated by Judge Lide in the order appealed from and supplemented by the views herein expressed, the demurrer was properly overruled.

Appellant is allowed twenty days from the date of the filing of the remittitur in which to answer.

Judgment affirmed.