16647

STANDARD WAREHOUSE CO. v. ATLANTIC COAST
LINE R. CO.

(71 S. E. (2d) 893)

94

*Messrs. Douglas McKay,* of Columbia, and *Rosen & Horger,* of Orangeburg, *for Appellant,*

*Messrs. Belser & Belser, J. E. Belser; Jr.,* and *Walter J. Bristow, Jr.,* all of Columbia, and *Julian S. Wolfe,* of Orangeburg, *for Respondent,*

*Messrs. McKay & McKay* of Columbia, and *Rosen & Horger,* of Orangeburg, *for Appellant, in Reply,*

July 9, 1952

HENDERSON, Acting Associate Justice.

This case was tried at Orangeburg before Honorable J. Woodrow Lewis and a jury. There was a verdict in favor of the defendant. The plaintiff thereupon gave notice that it would make a motion for judgment notwithstanding the verdict, and if such motion should not be granted, then for a new trial. Thereafter the motion was argued before the Circuit Judge. The eighth ground was that this "being primarily an equity or chancery case, for a mandatory injunction and to prevent a multiplicity of suits, it was and is the function of the Court to decide all issues and particularly the issue of liability and the amount of the liquidated damages independently of the findings of a jury."

Judge Lewis issued his order dated May 30, 1951, in which he held that the cause of action was essentially and primarily one in equity and not for the determination of a jury. He granted a mandatory injunction against the defendant as prayed for in the complaint. He also gave judgment for the plaintiff for $36,988.64 actual damages, and $1,000.00 for each month elapsing between the date of the decree and the reconstruction of the drainage system.

The defendant has appealed from the judgment, and in several of its exceptions raises the point that the action is

not one purely in equity, but that the pleadings also raise a legal issue which was determined by the jury's verdict, and that consequently the trial Judge was in error in disregarding it and in holding that it was merely advisory to him as Chancellor; and in giving judgment against the defendant.

It will therefore be clearly seen that the decisive point in the case is whether the action is one purely in equity, or whether on the other hand it is one which embraces a legal issue as well.

In order to determine this we must carefully examine the pleadings. There are three causes of action set forth in the complaint, stating three theories upon which the plaintiff seeks to establish liability, but asking for only one recovery. In the first cause of action it is said that the defendant, by means of its drainage system along its right-of-way, collected surface waters in time of storm, especially in September, 1945, and in September, 1948, and discharged them upon the plaintiff's property in concentrated form from an open gap in its drainage pipe, flooding the warehouse. In the second cause of action the plaintiff repeats all of the allegations of the first one, and alleges that the defendant constructed its railroad cut and embankment and its drainage system in a negligent and reckless manner, so as to discharge surface waters in concentrated form, and to cause them to back up on the lands of the plaintiff; and also that it diverted a natural watercourse, or a canal which had been substitued therefor, and known as Crystal Branch, by enclosing it in inadequate pipes. In the third cause of action the plaintiff repeats all of the allegations of the other two, and says that by reason of the construction and maintenance of the roadbed, consisting of the cut and fill, and the inadequate drainage system, the defendant has constituted a nuisance which has caused damage to the plaintiff's property.

In each one of the causes of action the plaintiff says that the acts of the defendant were deliberate and wilful and in wanton and total disregard of the property and other rights

of the plaintiff; that as a result of such wilful and wanton acts on the part of the defendant the plaintiff's property and warehouse business has been seriously injured and damaged and continues to suffer injury and damage; that the plaintiff has been put to great trouble and expense, entailing expenditures both in time and money, in attempting to protect itself and its property from the surface waters cast upon its property, and from the damage resulting therefrom; that as a result of the injury and damage to the property of the plaintiff by the surface waters so cast upon it, plaintiff has sustained great loss; and that as a result of the wilful, wrongful, and unlawful acts of the defendant the plaintiff has been injured and damaged in an amount of $112,000.00 actual and punitive damages. The plaintiff also alleges that it is entitled to a mandatory injunction restraining and enjoining the defendant from casting the surface waters upon its property, and ordering and directing it to construct an adequate drainage system to carry away such surface waters, and to abate and remove the nuisance.

The answer of the defendant denies the allegations of the complaint, and alleges that its drainage system is adequate; that if the plaintiff's warehouse was flooded it was caused by other agencies than the defendant, and not due to any negligence or wilfulness on its part; that any loss suffered by the plaintiff caused by the flooding of surface waters was the result of unusual and extraordinarily heavy rains, and that they were providential and constituted acts of God. The answer also contains the defense of contributory negligence and willfullness on the part of the plaintiff.

This case is one in which the plaintiff seeks to establish a private nuisance, and asks for actual and punitive damages and for an injunction abating the nuisance. *Brandenburg v. Zeigler,* 62 S. C. 18, 39 S. E. 790, 55 L. R. A. 414; *Foreman v. Augusta-Aiken Railway & Electric Corp.,* 115 S. C. 400, 105 S. E. 893; 46 C. J. 698 and 727. We do not think that it is one of purely equitable cognizance, or that the damages claimed are merely incidental to the

main relief sought, but that on the other hand the primary object of the suit is to gain actual and punitive damages, and an injunction is desired in the event the plaintiff should succeed in obtaining damages.

Under our code practice legal and equitable issues and rights may be asserted in the same complaint, and legal and equitable remedies and relief afforded in the same action. In such event the legal issues are for determination by a jury, and the equitable issues, of course, for the judge sitting as chancellor. *Henderson v. Rice,* 160 S. C. 307, 158 S. E. 258; *Keenan v. Leslie,* 79 S. C. 473, 60 S. E. 1114. The legal and equitable issues should be separated, and each tried by the appropriate branch of the Court. *Holliday v. Hughes,* 54 S. C. 155, 31 S. E. 867.

Some years ago the principle was laid down in the case of *Kennerty v. Etiwan Phosphate Company,* 17 S. C. 411, that generally in an action for a private nuisance a finding of fact by the jury on the law side of the court was necessary before the Court could grant an injunction, except in cases of a nuisance *per se.* However, that rule does not conform to modern practice, and there are many instances where an injunction may be issued by the equity court without a verdict of a jury being first had. Among instances of this kind are *Fraser v. Fred Parker Funeral Home,* 201 S. C. 88, 21 S. E. (2d) 577; *Young v. Brown,* 212 S. C. 156, 46 S. E. (2d) 673; *Carter v. Lake City Baseball Club,* 218 S. C. 255, 62 S. E. (2d) 470, and other situations not here necessary to be mentioned.

In the present case, however, where an injunction is not the primary relief sought, but where the main purpose is to secure money damages, and where all allegations of damages and the existence of facts which plaintiff relies upon to establish the nuisance are denied in the answer, and where the plaintiff also seek punitive damages, we think that there is presented a legal issue as well as an equitable one. Punitive damages cannot be awarded by the

Court in the exercise of its chancery powers. *Welborn v. Dixon*, 70 S. C. 108, 49 S. E. 232; *Bratton v. Catawba Power Company*, 80 S. C. 260, 60 S. E. 673.

Where a case contains both legal and equity issues, it is discretionary with the trial Judge as to which shall be tried first, and ordinarily that one is tried first which is more likely to aid in deciding the entire controversy. In the present case it seems clear that the logical course would be to try the legal question first, since if the facts do not show the existence of a nuisance and warrant a verdict for damages in favor of the plaintiff, it would not be entitled to an injunction in equity.

That course was properly followed by the Circuit Judge. The entire case, up to the jury's verdict, was conducted as an ordinary law action for damages. The Court submitted all issues of fact to the jury, including the question of punitive damages. He repeatedly instructed the jury that the facts were solely for their determination.

That course was taken by both parties. Neither of them sought to have issues framed for a jury trial under sections 593 and 594 of the Code and rule 28 of the Circuit Court. No motion for an order of reference was made by either party, although a reference is the method employed in perhaps the great majority of long equity cases.

Throughout the trial, up until after the verdict of the jury, that course was observed by the respondent itself. The case was placed on calendar 1 by the plaintiff's attorneys for trial at the March 1950, term of the court by a jury, along with the other law cases there. No motion was ever made to have it transferred to calendar 2. It was placed on the roster for trial at each intervening term. It was carried over for several terms, and was set for trial at the March 1951, term. The roster of cases for that term fixed Monday, March 19, 1951, for the hearing of equity cases, and jury trials were begun on March 20th. The case was set for trial on March 26th, was begun that day, and was concluded on March 29,

1951. No announcement was made to the Court, at the beginning of the trial, that the plaintiff regarded the case as one in equity. At the conclusion of the evidence the plaintiff made a motion for a directed verdict on the first and third causes of action, which motion was refused. This motion in no manner referred to the case as being one in equity. Throughout the trial the plaintiff sought to establish punitive damages, and presented three requests to charge that if the jury found that the defendant acted willfully, or wantonly, or with a conscious disregard of the rights of the plaintiff, the plaintiff would be entitled to punitive damages as well as actual damages. These requests were charged by the Court.

After the verdict of the jury the plaintiff gave notice of a motion for judgment notwithstanding the verdict or for a new trial. These motions were marked "heard" by Judge Lewis, and the court adjourned *sine die*. About three weeks later, on April·20, 1951, the motions were argued orally before the Circuit Judge, the written grounds of the motion having been served upon the defendant on the preceding day, April 19, and contending for the first time that the action was one in equity, and that the verdict of the jury was only for the aid and enlightenment of the Chancellor.

The ·plaintiff calls attention to two statements made by its counsel, not at the beginning of the trial, but during its progress. In one it was stated to the Court, "You will realize from our pleadings that it is the Court's function to pass upon the question of whether we should be granted a mandatory injunction against the railroad." That, in our opinion, is far from stating that the entire case was thought to be one of pure equity. One remedy sought by the plaintiff obviously was an injunction, and such of course was a matter for the Chancellor.

Again plaintiff's counsel asked the witness Dunlap this question: "I believe I stated to the Court that what we are primarily asking as to the rectification of the damage from

the standpoint of the future is that the Court direct the company to provide adequate facilities for the carrying off of this surface water?" This plainly refers to "damages from the standpoint of the future", and can have no reference to the claim for actual and punitive damages sought by the plaintiff by reason of events which had transpired in 1945 and 1948. This, we think, is clearly shown by the fact that thereafter, as we have seen, the respondent presented requests to charge the law as to punitive damages.

We believe that the exceptions of the appellant on this phase of the case should be sustained.

We turn now to consider the sustaining grounds of ██ the plaintiff.

The first ground of the motion is that even if this were properly a jury case, the Court should have granted the plaintiff's motion for a directed verdict on the ground that the evidence conclusively showed that the defendant had collected and discharged waters in concentrated form upon the plaintiff's property to its damage.

On this point there was a sharp conflict between the parties. The defendant vigorously contended that its drainage system was adequate, and that no damage resulted to the plaintiff from any fault on its part. It claimed that any injury to the respondent was caused by unprecedented rainfall. There was testimony that on September 17, 1945, the rainfall was 6.87 inches in about two hours, and on September 6, 1948, 8.77 inches of rain fell also in a space of two hours. The drainage system of the City of Orangeburg was designed to take care of a two-inch rain per hour. Appellant sought to prove that a great quantity of water swept down other portions of the city and overflowed into the warehouse area before it reached the right-of-way of the railroad company. Appellant also presented evidence that the 60-inch drain of the City, under Broughton Street, was the only outlet for the railroad's 48-inch pipe, as well as for a great deal of other city storm waters with which the defendant had

nothing to do. Indeed the agreed statement of facts in the transcript of record says that "It was contended by the defendant that the rainfalls of 1945 and 1948—at the time of the overflowing of the warehouse—were the heaviest up to those respective times on record. The case turned primarily on the question whether such overflowings and resulting damage to plaintiff were due to the way in which the defendant had constructed and maintained its embankment and drainage system, or was caused by an act of God or by the alleged inadequacy of the City of Orangeburg drainage system, or by the location of plaintiff's warehouse."

The second sustaining ground is that the evidence showed that the defendant diverted a natural watercourse and obstructed the natural flow of waters in the vicinity, thereby causing damage to the plaintiff. It may be noted that no motion for a directed verdict was made on the second cause of action, but since the allegations of that cause of action were carried forward into the third one, we shall consider this ground. There was a vigorously contested issue of fact between the parties as to whether there was ever a natural watercourse at this location.

The third sustaining ground was that the Court should have directed a verdict in plaintiff's favor on the ground that the evidence showed that the defendant had constructed and maintained its embankment and storm drainage system so as to cause waters to overflow and damage the plaintiff's property and to constitute a nuisance. What has been said above will apply here, the facts relied upon to establish a nuisance being strongly disputed.

The plaintiff also urges under its sustaining grounds that even if this were properly a jury case, the Court should have granted its motion for judgment *non obstante veredicto* upon the same three grounds above. These also must be overruled for the reasons just stated, since a motion for judgment notwithstanding the verdict simply takes us back to the point in the trial when a motion was made for a directed

verdict, and is limited to those grounds. *Gleaton v. Southern Railway Company,* 208 S. C. 507, 517, 38 S. E. (2d) 710; Circuit Court Rule 79.

The case was hotly contested on all points. Respondent vigorously contended that the roadbed was so constructed as to catch a great quantity of rainwater, and that the 48-inch drain pipe and the culvert under Rowe Street were altogether too small to carry it off. It took more than three days to try the case. There were seventeen witnesses for the plaintiff and fourteen for the defendant. The testimony in the record covers three hundred printed pages, and the exhibits forty additional pages.

In view of the conflict in the evidence on all of these disputed points, we believe that the trial Judge was correct in refusing to direct a verdict, and in refusing to grant the motion for judgment. Therefore the sustaining grounds are overruled.

In view of what has been said, it will not be necessary for us to consider the other exceptions.

When the jury decided all the issues of fact against the respondent, and thus found that no nuisance existed, the very foundation of the claim for equitable relief by injunction was destroyed.

The judgment of the Circuit Court is reversed, and the case is remanded to that Court in order that judgment may be entered in favor of the defendant in accordance with the verdict of the jury.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.