STATE OF TENNESSEE ex rel. CHARLES CUNNINGHAM et al.,
Plaintiffs in Error,

*v.*

DONALD C. FEEZELL, doing business at East Tennessee
Cremation Company, Defendant in Error.

400 S.W.2d 716.

(*Knoxville,* September Term, 1965.)

Opinion filed March 2, 1966.

Hubert D. Patty, Maryville, for plaintiff in error.

Rom Meares, Sr., Maryville, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

The Honorable Glenn W. Woodlee, Chancellor, sitting by interchange for the Honorable W. Wayne Oliver, Judge of the Fourth Judicial Circuit, pursuant to appointment by the Chief Justice, heard this case which was brought in the name of the State of Tennessee, under T.C.A. sec. 23-301 et seq., on behalf of twenty-six citizens of Blount County, all similarly situated, to enjoin the establishment of a crematory by Defendant Feezell in a "rural or rural residential" area in said county.

The parties will be referred to in this Court as they were in the trial court; that is, Charles Cunningham and others will be referred to as "petitioners", and Donald C. Feezell will be referred to as the "defendant."

Petitioners aver in their bill that the proposed establishment and operation of the crematory is a public or private nuisance and said establishment and operation should be enjoined immediately. They aver, inter alia:

The exact site where the defendant proposes to carry on his unsanctioned disposal of human bodies is located on a *narrow, secondary road* known as *Clover Hill Road*. The building where he proposes to carry out his activities is a very *small building* which has been *converted from a garage*. The building has protruding from it a large and *gruesome* smokestack.

The announced purpose of the defendant and the *possibility* that he *may carry out his plans* and actually burn dead human bodies in the area has greatly horrified the community, caused a great uproar, turmoil, and much inconvenience, discomfort, annoyance, anguish, mental and physical sickness resulting in agonizing discomfort, depression to the petitioners and others similarly situated, and depriving them of the quiet, peaceful comfort, repose and enjoyment of their property and homes and wellbeing. Should the defendant be permitted to carry out his intentions it will greatly endanger the whole area and deprive the property owners of the quiet use and enjoyment of their property and endanger their lives and health either by actually rendering them sick mentally and/or physically and by lowering the vitality and resistance of others rendering them more susceptible to disease and illness. Such conduct by the defendant would violate the mores of the petitioners and others similarly situated and the accepted laws of decency in the community and will likewise obstruct the reasonable and comfortable use of their property causing the same to be depreciated in value.

Should the defendant be permitted to carry out his intended operation, it would of necessity require the use of ambulances which would have to be on the road

both day and night inasmuch as it is the announced intentions of the defendant to bring dead bodies from foreign states from any and every place where he might solicit for his proposed operation. The operation of ambulances upon the narrow roads in the area complained of would be a hazard to other traffic on the roads, would very adversely affect the operation of school buses which operate twice a day throughout the area. The presence of the ambulances in the area would be very oppressive and disturbing to school children riding the buses and walking to and from school by engendering in their minds reminders of death and the unsanctioned disposal of dead human bodies to the extent that they would be greatly hindered in their enjoyment of life and the pursuit of their education. People going to and from church and attending public worship would likewise be disturbed and interfered with.

The building where the defendant proposes to carry on his operation as above described is very inadequate and is not supplied by a continuous source of fuel and could at the most handle only one body at a time, making it necessary that other bodies be stored in the area for various periods of time, in all possibility in open view of the petitioners and all other residents which would result in all of the adverse effects heretofore set out.

The apparatus which the defendant proposes to use is manufactured from without of the State and at a great distance from the area and when the same would become in disrepair, long periods of time would elapse before the same could be placed in order again which would without doubt result in noxious odors, stenches and smells and pollution of the area.

The operation would emit vapors through its normal operation and would affect the area adversely and interfere with the residents as changes in the atmosphere take place.

It is alleged that there would be great mental anguish and suffering not only from the visible burning vapors from the operation but also from the cruel and gruesome disposal of dead human bodies. (Emphasis supplied).

The petitioners further allege that no other such establishment is permitted in Tennessee, and that the defendant is not authorized by the State to do business here.

A demurrer was filed to the petition stating essentially that it sought an injunction for an anticipated injury which constitutes no basis for injunctive relief. Excellent trial briefs were prepared by both parties, and in a memorandum opinion and decree, the chancellor sustained the demurrer and dismissed the petition on the ground that the suit was premature. Motion for a new trial having been overruled, appeal was perfected to this Court.

The question presented for determination by the Court is essentially this: Does a cause of action exist to enjoin, as a nuisance, a proposed cremation establishment in a rural or rural residential area under averments of the residents of the area that it will cause mental anguish, depressed feelings, physical discomfort and lower property values? We do not think so.

We believe that for an injunction suit to be sustained prior to the alleged nuisance coming into being, it must be sufficiently shown in the original bill or petition that the proposed establishment is a nuisance *per se;* that is within itself.

A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, *regardless of location or surroundings*. Nuisances in fact or per accidens are those which become nuisances by reason of circumstances and surroundings and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger or inflict injury on person or property. 66 C.J.S. Nuisances sec. 3 (1950). (Emphasis supplied.)

Other definitions are: any act or omission or use of property or *thing* which *is* of itself hurtful *to the* health, tranquility, or morals, or which outrages the decency of the community; that which *cannot* be so *conducted* or *maintained* as to be *lawfully carried on* or *permitted* to *exist;* and, as related to private persons, an act or use of property of a continuing nature, offensive to and legally injurious to health and property, or both. 39 Am.Jur., Nuisances, sec. 11 (1942). (Emphasis supplied.)

█ It is perhaps misleading to define a nuisance per se as one which exists ''at all times and under any circumstances, regardless of location or surroundings.'' Actually, a nuisance cannot exist without surrounding circumstances, because it is the surrounding circumstances that determine whether an injury is occasioned; and it is axiomatic that some injury must be occasioned or be at least imminent because of the alleged ''nuisance.''

██ There is, in at least one case in this State, an indication that the difference between a nuisance per se, and a nuisance per accidens is that in the former, injury

in some form is certain to be inflicted, while in the latter, the injury is uncertain or contingent until it actually occurs. *Pierce v. Gibson County*, 107 Tenn. 224, 64 S.W. 33, 55 L.R.A. 477 (1901). This case held that where injury from a nuisance is not real and immediate and certain to occur, but only uncertain or contingent, the nuisance will not be enjoined anticipatory to its going into operation. C.J.S. indicates agreement with this case:

A *mere possibility* or *fear* of *future injury* from a structure, instrumentality, or business which is *not* a nuisance *per se* is not ground for injunction, and equity will not interfere where the apprehended injury is doubtful or speculative; reasonable probability, or even reasonable certainty, of injury, or a showing that there will necessarily be a nuisance, is required. 66 C.J.S., Nuisances sec. 113 (1950). (Emphasis supplied.)

Another Tennessee case sets forth the rule more generally: Injunctions will not issue "merely to relieve the fears or apprehensions of an applicant." *Nashville, C. & St. L. R. v. Railroad & Public Utilities Comm.*, 161 Tenn. 592, 32 S.W.2d 1043 (1930). In *Central Drug Store v. Adams*, 184 Tenn. 541, 201 S.W.2d 682 (1947), it was said that

* * * [w]here a business is not a nuisance in and of itself, a court of equity will not anticipate that it will be operated injuriously to others and award an injunction to abate it. 184 Tenn. at 549, 201 S.W.2d at 685.

We do not say that an anticipatory nuisance is not enjoinable under any circumstances. If the injury anticipated is imminent and certain to occur, there may, in fact, be a proper case for immediate abatement,

provided, of course, the injury is recognized as otherwise actionable at law and equity. We do not say that mental disturbances or "psychic" injuries caused by a nuisance, public or private, are not such as may be actionable at law or equity. They can, in fact, be very real to the complainants. We do say, however, that allegations in the petition must be sufficient, in defining the circumstances and mode of operation surrounding the undertaking, to persuade the court, if they are proved, that injury is imminent and certain. We are convinced that proof of the alleged location of defendant's crematory and the alleged mode of operation and physical appearance of the same will be insufficient to foretell certain injury.

Our research has uncovered no case involving the attempted abatement of a human cremation establishment. Possibly the closest analogy would be the operation of a funeral parlor—at least as regards "psychic" injuries and lowered property values. In a zoning case, *Qualls v. City of Memphis,* 15 Tenn.App. 575 (1932), it was held alternatively that even though a funeral parlor was not a nuisance per se, it could become so with certain facts and circumstances present such as residences nearby, location on a narrow street, and a small lot. The case obviously involves an urban or suburban location, which is not an allegation in the instant case. Private cemeteries, though perhaps not as closely analogous to the instant situation as are funeral parlors, have been held by this Court not to be nuisances per se, even though

> * * * the location and maintenance of cemeteries might properly involve public health, public welfare, might disarrange the location of highways and streets, and under some circumstances retard or even destroy civil

enterprise. *Mensi v. Walker,* 160 Tenn. 468, 26 S.W.2d 132 (1930).

As regards funeral parlors or undertaking establishments, the majority rule in this country, according to an annotation in 39 A.L.R.2d 1000 (1955), is

\* \* \* that if an undertaking establishment in a purely residential section causes from its normal operations, depressing feelings to families in the immediate neighborhood, and, as a constant reminder of death, appreciably impairs their happiness or weakens their powers of resistance and depreciates the values of their properties, such an establishment constitutes a nuisance.

In the cases that have ruled on this point of equity, the circumstances surrounding the so-called ''nuisance'' and the anticipated injuries alleged have not followed any exclusive pattern, so some of them merit closer examination. It will be noted that most of these cases rule on the basis of a *proposed* undertaking establishment; the injuries complained of are what *would* occur *if* the business is allowed to begin.

The weight of authority is represented by *Clutter v. Blankenship,* 346 Mo. 961, 144 S.W.2d 119 (1940), wherein a proposed funeral parlor in a strictly residential area was held to be an abatable nuisance, no matter how carefully run, because it would be a constant reminder of death and destroy the mental comfort of homeowners.

In *Mutual Service Funeral Homes v. Fehler,* 254 Ala. 363, 48 So.2d 26 (1950), 50 So.2d 770 (1952), an anticipated funeral home operation was held enjoinable even though it was to be put on the other edge of a wholly residential area and even though the area was not zoned

residential; this, of course, was absent any public necessity for the operation in this location.

The majority rule is also stated in *Brown v. Arbuckle,* 88 Cal.App.2d 258, 198 P.2d 550 (1948) : depressed feelings are sufficient grounds to enjoin a proposed funeral parlor in a residential area; however, the case turned partially on the fact that there were restrictive covenants on adjoining property, of which defendant had notice.

We consider two cases which appear to follow the majority rule, but which apply a certain flexibility to the problem. In *May v. Upton,* 233 Miss. 447, 102 So.2d 339 (1958), it was stated that in an area "essentially" residential, a proposed funeral home should be enjoined as a nuisance, but *each case turns on its own facts,* and where an examination of the circumstances, from the evidence presented, indicates otherwise, an injunction should not issue; in this case the funeral home was to be put on the boundary of residential and commercial areas and was *not* enjoined.

In *Jack v. Torrant,* 136 Conn. 414, 71 A.2d 705 (1950), it was the opinion of the court that certain factors regarding the residences in the area should be examined; their extent, kind and location. It is also indicated, as other cases indicate, that the depressed feelings and discomfort must be those that ordinary people sustain in living near an undertaking establishment.

Our holding in the instant case does not, perhaps, coincide precisely with some of the cases following the majority rule. We are not, however, in disagreement with what we think are two of the better reasoned cases aforementioned, i. e., *May v. Upton,* supra, and *Jack v. Torrant,* supra. Nevertheless, we are limited in the instant

case to an examination of those factors alleged in the petition, proof of which would not indicate certain injury, either emotional or physical, to petitioners. Residences in a rural area are sparsely situated and there is no allegation in the bill that any residence is in close proximity to the proposed crematory, but that it is to be located in "an entirely rural area."

There is, of course, a minority rule, the gist of which is that mental suffering or depressed feelings are not actionable injuries where funeral parlors are proposed for residential areas. *Stoddard v. Snodgrass,* 117 Or. 262, 241 P. 73, 43 A.L.R. 1160 (1925), is a good example of this line of cases. In *Dawson v. Laufersweiler,* 241 Iowa 850, 43 N.W.2d 726 (1950), the court indicated, in dictum, that no injunction would issue in a strictly residential area; however, the case actually turned on the fact that the neighborhood was "in transition" from a residential to a commercial area. *Bauman v. Piser Undertakers Co.,* 34 Ill.App.2d 145, 180 N.E.2d 705 (1962), apparently follows the minority rule, except that here the section of the street on which a mortuary was to be built was zoned for it, but the total area surrounding the site was predominantly residential.

Petitioners cite in their brief the case of *Young v. Brown,* 212 S.C. 156, 46 S.E.2d 673 (1948), wherein it was held that an injunction against the establishment of a private cemetery in a residential area is proper. While the facts of the case are readily distinguishable from those of the instant case, it may be noted that the court there, as we do here, gave particular importance to the *proximity* of residences in the area. *Jones v. Trawick,* 75 So.2d 785, 50 A.L.R.2d 1319 (Fla. 1954), agrees on similar facts that an injunction is proper in a purely residential

area. However, a later Florida case says that where a cemetery is to be put in a *rural* area where a majority of homes are also used for business enterprises, it will not be enjoined. *Overby v. Piet,* 163 So.2d 532 (Fla.App. 1964).

▮ Finally, petitioners allege that defendant was not authorized or licensed to do business in this State and this particular county. Among the statutes cited by petitioners is the chapter regulating funeral directors and embalmers. T.C.A. sec. 62-510 requires the licensing of "funeral directors." By T.C.A. sec. 62-516, it is unlawful for any person to engage in "funeral directing or embalming" without a license. By T.C.A. sec. 23-313, engaging in an "unlawful business" is a public nuisance and can be abated by injunction. T.C.A. sec. 62-501 defines "funeral directing" and among other things, it can mean

> * * * the business of preparing dead human bodies for burial by means other than embalming, or the disposition of dead human bodies; or the provision or maintenance of a place for the preparation for disposition, or for the care or disposition of dead human bodies; * *.

It seems that this definition includes the operation of a crematory. However, these statutes have relevance only where the operation has once begun. The defendant must first "engage" in the business without a license before it is subject to be abated as a nuisance.

T.C.A. secs. 39-2903 and 38-708 are mentioned in the petition and demurrer. T.C.A. sec. 39-2903 sets out that a business which produces noxious odors becoming injurious and dangerous to the health of individuals or the public is a nuisance and may be abated as such. While this statute was aimed principally at slaughter houses, it

could conceivably apply to the case at bar, but only after the operation had commenced and there were proved to be noxious and offensive odors present. T.C.A. sec. 38-708 simply says that if a person dies and is to be cremated, the county coroner and medical examiner must be notified, or the district attorney general, the local police, or the county sheriff shall be notified, who in turn shall notify the county medical examiner.

Because we find the allegations in the petition insufficient, even if proved, to persuade us that a nuisance is sure to be created by the operation of a crematory in this particular location, we, therefore, affirm the ruling of the trial court as set forth in a splendid memorandum opinion.

Affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.