IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 10, 2007 Session

# BMC ENTERPRISES, INC. d/b/a BOND MEMORIAL CHAPEL v. CITY OF MT. JULIET, ET AL.

### Appeal from the Wilson County Chancery Court
### No. 06307    C.K. Smith, Chancellor

### No. M2007-00795-COA-R3-CV - Filed March 27, 2008

Plaintiff has operated a funeral home on its property since 1997.  In this zoning dispute, the City of Mt. Juliet Board of Zoning Appeals ("the Board") refused to allow plaintiff to establish a crematory as an expansion of plaintiff's funeral home services.  The funeral home had been a legal non-conforming use of plaintiff's property since the City's zoning ordinance was amended in 1998.  The Board refused to allow plaintiff to operate a crematory on the same property because crematories are not permitted in the zoning district for plaintiff's property.  Plaintiff filed a Petition for Writ of Certiorari to the Trial Court for judicial review of the Board's decision.  The Trial Court granted the writ and found that the Board's decision was arbitrary, illegal, and capricious.  The Trial Court reversed the Board's decision and ordered defendants to allow plaintiff to build and operate the proposed crematory on its funeral home property.  The Trial Court also granted plaintiff $10,000 in attorney fees and costs.  Defendants appeal.  We affirm.  We also hold that BMC is entitled to its reasonable attorney fees and costs incurred during this appeal, not to exceed $10,000, pursuant to the Equal Access to Justice Act, Tenn. Code Ann. § 29-37-101, *et seq.*  Therefore, we remand to the Trial Court for a determination of the proper amount of attorney fees and costs to be awarded to BMC and for collection of costs below.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and ANDY D. BENNETT, J., joined.

William N. Bates and Beth L. Frazer, Nashville, Tennessee, for the Appellants, City of Mt. Juliet; City of Mt. Juliet Board of Zoning Appeals; and Bryan Grassmeyer, Jackie Heatherly, Roger Morse, Larry Searcy, and Alfred H. Williams serving in their capacity as members of the City of Mt. Juliet Board of Zoning Appeals.

Jere N. McCulloch and David H. Veile, Lebanon, Tennessee, for the Appellee, BMC Enterprises,

Inc. d/b/a Bond Memorial Chapel.

**OPINION**

*I. Background*

BMC Enterprises, Inc. ("BMC") operates Bond Memorial Chapel ("the Funeral Home"), a funeral home located in Mt. Juliet, Tennessee. When BMC opened the Funeral Home in 1997, the lot on which the Funeral Home is located ("the Lot") was within the City's O (Office) zoning district. Funeral homes were a permitted use within the O zoning district.

However, in 1998, the City Commission amended the City of Mt. Juliet Zoning Ordinance ("the Zoning Ordinance"), and the Lot was placed into an OPS (Office Professional Services) zoning district. Funeral homes were not listed as a permitted use in any of the zoning districts established by the 1998 amendment. However, the Funeral Home was permitted to continue operating as a legal nonconforming use.

The 1998 amendment to the Zoning Ordinance placed crematories within the IS (Industrial Special) zoning district. There is, however, no property in the City classified as IS. Crematories are listed in the "Manufacturing – Basic Industry" subsection of the IS zoning district, along with the following uses: abrasive and nonmetallic mineral processing; asphaltic cement plants; bulk fuel storage, processing, and distribution; cement and/or concrete plants; coal yards; cotton ginning; fat rendering; foundries; grain milling; ore reduction; offal processing; pulp manufacturing; slaughterhouses; steel works and metal smelting; and tanneries.

In May of 2006, BMC contacted Deborah Moss, City Zoning Administrator, to discuss establishing a crematory on the Lot as part of the Funeral Home's business. Ms. Moss denied BMC's request on the basis that the City's Zoning Ordinance allows crematories only in the IS zoning district, not in the OPS district where the Funeral Home is located. Ms. Moss also recommended that BMC file an administrative appeal with the Board due to a conflict between the Zoning Ordinance and the Standard Industrial Classification Manual, a reference guide used by Ms. Moss in her job that classifies funeral homes and crematories as the same industry.

BMC filed its administrative appeal to the Board, and a hearing was held on June 8, 2006. Ms. Moss provided an advisory memorandum to the Board members regarding BMC's appeal, which stated in pertinent part:

> Bond Memorial Chapel recently inquired to have a crematory placed at their present business located at 1098 Weston Drive Mt. Juliet, TN.
>
> Upon inspection of the Zoning Ordinance, crematories are a use listing under basic industry. Basic Industry fall under the category of IS (Industrial Special) a district that is not being utilized anywhere in the City of Mt. Juliet.

Bond Memorial is presently zoned OPS (Office Professional Services). This was a zone granted to them in the year 1995. In the existing Zoning Ordinance (1998 version with 2001 updates) the funeral home industry does not have a use listing, therefore making Bond Memorial a non-conforming use. Non-conforming uses are allowed to expand (13-103.4).

The Standard Industrial Classification Manual (1987) issued from the Executive Office of the President of Management and Budget lists crematories and funeral homes as the same service, therefore they are a permitted use. This manual is used to determine uses and their classification.

The initial decision from this office is that crematories are basic industry and therefore we do not have a zone for them. The funeral home is a non-conforming use and crematories could be allowed from the manual. The owners of Bond Memorial Chapel have asked for an Administrative Appeal from the Board due to the conflict in the ordinance and the classification manual. This is an appropriate action to be taken. If the board requires any other information from this office please contact me and I will be happy to provide any information.

At the Board hearing regarding BMC's appeal, BMC owners Andy Bond and Tracy Bond presented information regarding the proposed crematory. BMC planned to build a three-car garage on the Lot. This garage would also house a single cremation machine, also referred to as a cremator. The Bonds showed Board members a diagram of the Lot with the current building and the location of the proposed garage, as well as an artist rendition of the garage. An Emission Testing Report supplied by BMC showed that the cremation chamber it planned to purchase would have emissions well below the levels permitted by federal regulations. A stack extending three feet above the roof would vent only heat out of the crematory, and the crematory would operate without releasing smoke or odor into the environment. The crematory also would have to comply with federal emissions standards. While inspections would be done on an annual basis by the EPA and state officials, there also could be unannounced inspections at other times.

The Bonds presented data regarding the percentage of BMC's business derived from cremations since the Funeral Home opened in 1997. In 1997, only 6.2 percent of the Funeral Home's services involved cremation. That number had jumped to an estimated 22.5 percent in 2006. Nationwide, the rate of cremation in 2006 was approximately 28 percent, and that figure is expected to increase to between 38 and 42 percent in the next decade. Andy Bond stated that there is no additional licensing requirement for a crematory in conjunction with an existing funeral home. Tracy Bond added that a stand-alone crematory would require the presence of a licensed funeral director.

The Bonds also produced information regarding the values of property near the Funeral

Home and three crematories in Middle Tennessee. The data showed that neighboring property values had increased since these funeral businesses opened. However, only one resident who lived near the Funeral Home spoke in favor of allowing BMC to add a crematory on the property. Several other neighbors testified against BMC's request, stating concerns about their property values and the psychological aspects of having a crematory in the vicinity. Based on a show of hands, 32 residents at the hearing opposed allowing BMC to install a cremation machine.

City Commissioner Ed Hagerty stated that he would not support rezoning the Lot because of the community's objections to a crematory in that area. In response to a Board member's question, Mr. Hagerty confirmed that the legislative intent of the City Commission in adopting the 1998 amendment to the Zoning Ordinance was that crematories be in an industrial zone only. Mr. Hagerty also stated that he was a member of the City Commission when the present Zoning Ordinance was adopted.

The Board voted unanimously to deny BMC's appeal. On the form recording its decision, the Board made the following findings: "The Board does not find that a crematory is [a] continuation of a non-conforming use. The Board finds that the intention of the City Commission was to put crematories in an industrial zone per Section 3-103.4 item 2.b."

On August 4, 2006, BMC filed a Petition for Writ of Certiorari with the Wilson County Chancery Court ("the Trial Court"), alleging that the Board acted illegally and arbitrarily in refusing to allow BMC to install a cremation machine on its property and that the Board's decision was not supported by any material evidence. BMC named the following as defendants in the lawsuit: the City of Mt. Juliet; the Board; and Board members Bryan Grassmeyer, Jackie Heatherly, Roger Moore, Larry Searcy, and Alfred H. Williams in their official capacity (collectively "Defendants"). BMC requested that the Trial Court grant the writ and then either: remand the matter for a new hearing before the Board; or reverse the Board's decision and order the Board "to approve the construction of the garage and the operation of a cremation chamber on the property as a continuation of the existing funeral home use."

The Trial Court granted the writ, and the City filed the administrative record of the Board's proceedings ("the Administrative Record") with the Trial Court. The parties also filed briefs with the Trial Court. In its brief, BMC argued that Mr. Hagerty, whom the Board relied on during its hearing to determine the intent of the City Commission regarding the zoning of crematories, incorrectly stated that he was a City Commissioner when the 1998 amendment to the Zoning Ordinance was approved. In fact, Mr. Hagerty did not take office until nearly two years later. BMC filed the minutes from the November 20, 2000, City Commission meeting at which Mr. Hagerty was sworn in as a new commissioner as an exhibit to its trial brief.

After reviewing the record and hearing arguments of counsel, the Trial Court concluded that "crematories were basically part of an on-going business of funeral homes," relying on the Administrative Record, the definition of funeral establishments at Tenn. Code Ann. § 62-5-101, and our Supreme Court's opinion in *Cunningham v. Feezell*, 400 S.W.2d 716 (Tenn. 1966). The Trial Court chastised the Board for giving in to public pressure opposing the crematory and then continued:

So I am finding the board acted illegally and arbitrarily and I am reversing their decision and allowing [Plaintiff] to put in a crematory . . . .

I do find this to be a customary part of the business of funeral homes through the United States, Tennessee, everywhere, and merely a continuation and expansion of an existing business. It is just incidental to the business of running a funeral home.

I don't feel like the decision of the board was based on any reasoning nor exercise of any type of reasonable judgment. It was a disregard of the facts and circumstances of this case. I think it was just giving in to the number of people. Obviously, it is a clear error of judgment here.

The Trial Court reserved the issue of BMC's request for attorney fees and costs, and then later granted BMC $10,000 in attorney fees and costs pursuant to the Equal Access to Justice Act, Tenn. Code Ann. § 29-37-101, *et seq*. Defendants appeal.


## II. Discussion

Defendants present two issues for our review, which we restate as follows:

1. Whether the Trial Court erred by finding that the Board acted illegally, arbitrarily, or capriciously in concluding that Plaintiff's proposed crematory was not a continuation of the legal nonconforming use of a funeral home on Plaintiff's property.

2. Whether the Trial Court erred by finding that the Board acted illegally, arbitrarily, or capriciously in interpreting the zoning ordinance to conclude the intention of the city commissioners was to place crematories in an industrial zoning classification.

The proper method for obtaining judicial review of a decision by a local board of zoning appeals is by filing a petition for a common law writ of certiorari. *Harding Academy v. Metro. Gov't of Nashville & Davidson County*, 222 S.W.3d 359, 362 (Tenn. 2007). The scope of review afforded to courts by a writ is extremely limited. *Id.* (citing *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)). Thus, the Trial Court, as are we, was restricted to determining whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *Lewis v. Bedford County Bd. of Zoning Appeals*, 174 S.W.3d 241, 245-46 (Tenn. Ct. App. 2004). In *Leonard Plating Company v. Metropolitan Government of Nashville and Davidson County*, we provided additional guidance regarding this standard of review:

Review under a common-law writ of certiorari does not extend to a

redetermination of the facts found by the board or agency whose decision is being reviewed. The courts may not (1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.

*Leonard Plating Co. v. Metropolitan Gov't of Nashville and Davidson County*, 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (internal citations and footnotes omitted).

The issue of whether there is sufficient evidence to support a zoning decision is a question of law. *Wilson County Youth Emergency Shelter, Inc. v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999) (citing *MC Properties, Inc. v. City of Chattanooga*, 994 S.W.2d 132, 134 (Tenn. Ct. App. 1999). Therefore, we review the record *de novo* without a presumption of correctness while applying the limited standard of review applicable here. *Id*.

The parties agree that the Funeral Home became a legal nonconforming use in 1998 when the Zoning Ordinance was amended and no longer listed funeral homes as a use in the zoning district covering the Funeral Home's lot. The Funeral Home was permitted to continue its operations pursuant to Section 13.102.5 of the Zoning Ordinance, which provides in relevant part that ". . . any use which shall become nonconforming upon enactment of this ordinance, or any subsequent amendments thereto, may be allowed to continue in operation and be permitted provided that no change in use . . . is undertaken."

Section 13.102.7 of the Zoning Ordinance provides for the expansion of nonconforming uses as follows:

> Any use which shall become nonconforming upon enactment of this ordinance, or any subsequent amendments thereto, *may be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the nonconforming use* provided that any such expansion shall not violate the provisions set out below.[1]

City of Mt. Juliet Zoning Ordinance § 13.102.7 (emphasis added).

Tennessee statutory law includes a similar provision regarding expansion of nonconforming businesses:

---

[1]None of the provisions set forth as exceptions to this section apply to BMC's situation, and the parties do not contend otherwise.

Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning *shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning . . . .*

Tenn. Code Ann. § 13-7-208(c) (emphasis added).

Defendants emphasize that crematories are limited to the IS zoning district in the City and, therefore, are not permitted in the zoning district where the Funeral Home is located. In fact, part of the Board's justification for its denial of BMC's appeal was that the City Commission intended to permit crematories only in the IS district when it amended the Zoning Ordinance in 1998. While these statements might be true, they do not control our analysis of this case. The City Commission may not, even if it intends to do so, eliminate the Funeral Home's right "to expand operations and construct additional facilities which involve an actual continuance and expansion of the nonconforming use . . . ." City of Mt. Juliet Zoning Ordinance § 13.102.7; *see also* Tenn. Code Ann. § 13-7-208(c). We agree with the Trial Court's determination that the intent of the City Commission in restricting crematories to the IS district is irrelevant to our analysis. Rather, the key issue is whether operation of a crematory is "an actual continuance and expansion of the activities" of the Funeral Home's business.

The Zoning Ordinance does not include a definition of a funeral home or a crematory. However, Tenn. Code Ann. § 62-5-101(7) defines a "funeral establishment" as follows:

"Funeral establishment" means any business . . . engaged in arranging, directing, or supervising funerals for profit or other benefit; or the preparing of dead human bodies for burial; *or the disposition of dead human bodies*; or the provision or maintenance of place for the preparation for disposition; or for the care or disposition of human dead bodies[.]

Tenn. Code Ann. § 62-5-101(7) (emphasis added). It is undisputed that the function of a crematory is to dispose of dead human bodies. Thus, the General Assembly envisioned that a funeral establishment could include a funeral home and/or a crematory.

Furthermore, the General Assembly has defined "funeral directing" to include the "practice of directing or supervising funerals or the practice of preparing dead human bodies for burial by any means, other than by embalming, or the disposition of dead human bodies." Tenn. Code Ann. § 62-5-101(6)(A). In *State ex rel. Cunningham v. Feezell*, we concluded that the definition of "funeral directing" found at Tenn. Code Ann. § 62-501 "includes the operation of a crematory." 400 S.W.2d at 721. Section 62-501 was the predecessor statute to § 62-5-101, and it defined "funeral directing"

to include:

> . . . the business of preparing dead human bodies for burial by means other than embalming, or the disposition of dead human bodies; or the provision or maintenance of a place for the preparation for disposition, or for the care or disposition of dead human bodies; . . .

Because the statute upon which we based our decision in *Cunningham* is nearly identical to the current statute regarding funeral directing, we conclude that the practice of funeral directing still includes the operation of a crematory. This is consistent with the General Assembly's definition of a funeral establishment to include both funeral homes and crematories. Clearly, state lawmakers do not view funeral homes and crematories as separate industries, but, rather, as complementary services offered by the funeral industry.

Relying on our decision in *Lafferty v. City of Winchester*, 46 S.W.3d 752 (Tenn. Ct. App. 2000), Defendants argue that allowing BMC to operate a crematory in conjunction with the Funeral Home would be an illegal change of a nonconforming use of the property. In *Lafferty*, plaintiffs purchased property that was being operated as a bed and breakfast. *Id.* at 754. The bed and breakfast had been grandfathered in as a nonconforming commercial use when the city annexed and subsequently zoned the area for low-density residential use prior to the appellants' purchase of the property. *Id.* Plaintiffs submitted a proposed development plan to the city, showing that the inn would be developed to include three rented bedrooms plus a dining facility for social events such as wedding receptions, private parties, and meetings of local organizations. *Id.* at 755. The city approved the proposed plan and opted to leave the inn as a grandfathered, nonconforming use rather than re-zoning the parcel. *Id.* Later, plaintiffs applied for a liquor license and sought the city's permission to construct a 20-foot by 20-foot one-story addition to house an ice machine, coolers, and storage space for beverages. Id. The city approved the site plan for the addition. *Id.* However, plaintiffs subsequently constructed a two-story, 20-foot by 38-foot addition which included a separate outside entrance. In that addition, plaintiffs established a bar called the Green Door Pub. They also built an outdoor gazebo for live music and other outdoor events. *Id.* All of this occurred without the city's knowledge or consent. *Id.*

Due to complaints from neighbors regarding the noise caused by plaintiff's outdoor events, plaintiffs opted to build a 38-foot by 40-foot banquet room to move their outdoor events inside. *Id.* Plaintiffs began construction on the room before obtaining a building permit, and the building inspector ordered plaintiffs to stop work until they had obtained the city's permission for the expansion. *Id.* Plaintiffs submitted plans for the addition to the local board of zoning appeals, which declined to issue a permit for the work. *Id.* at 756. Plaintiffs filed a writ of certiorari, and the trial court affirmed the board's decision. *Id.* Plaintiffs appealed to this Court, and we also affirmed, finding as follows:

> The record contains material evidence from which the Board could have rationally concluded that the proposed addition would have

further expanded the Antebellum Inn into a commercial activity quite different from its original nonconforming use – a bed and breakfast that would be able to accommodate occasional small social events. Accordingly, the Board could rightly withhold approval of the expansion on grounds that it would have changed the way the property was being used to a different non-conforming use.

*Id.* at 760.

The facts in *Lafferty* are strikingly different from those presented in the case at bar. In *Lafferty*, plaintiffs opened a bar on the property where their bed and breakfast was located. They then began providing outdoor entertainment, sometimes charging a cover charge for admittance to the party area. When plaintiffs attempted to construct an addition that would allow them to move the events inside that were being held outside, the local board of zoning appeals concluded that a bar/entertainment hall was a different use of the property than the nonconforming use that was previously allowed – a three-room bed and breakfast with a dining facility capable of accommodating small social events. Consequently, the board did not act improperly in refusing to grant plaintiffs' request for a building permit.

There has never been a version of the City Zoning Ordinance that listed an appropriate zoning category for both funeral homes and crematories as each version listed either funeral homes or crematories, or neither. However, the Standard Industrial Classification Manual, which was cited by the City's zoning administrator in her letter to Board members, places both crematories and funeral homes in the same category, "Funeral Service and Crematories." In her letter, Ms. Moss pointed out that the Standard Industrial Classification Manual "is used to determine uses and their classification." Therefore, a treatise relied upon, at least to some extent, by the City zoning administrator places funeral homes and crematories in the same use classification, providing additional support for BMC's assertion that the cremation machine it hopes to install is merely an expansion of its funeral home business.

In contrast to *Lafferty*, BMC is attempting to install a cremation machine as an additional service to be offered by the Funeral Home in its funeral home business. Reviewing all the evidence in the record, we find no error in the Trial Court's decision that a crematory is an expansion of the funeral home services already provided by BMC. It is not a use that is different from the Funeral Home's nonconforming use grandfathered in when the City Commission amended the Zoning Ordinance in 1998. Both funeral homes and crematories offer services commonly provided by the funeral industry, and funeral home services and cremations are frequently offered at the same location, as BMC seeks to do. As a result, Defendants' reliance on *Lafferty* is misplaced. There is no material evidence in the record supporting any other finding or conclusions.

After carefully reviewing the record, we find no error with the Trial Court's conclusion that the evidence is overwhelming that the crematory is an expansion of Plaintiff's funeral home business, with no material evidence to contrary, and, therefore, the Board acted illegally in denying BMC's request to install a crematory on its property. There is no material evidence in the record to

support the Board's decision. The Board applied an incorrect analysis to the issue of expanding BMC's nonconforming use pursuant to the Zoning Ordinance and state law, emphasizing the City Commission's intent in placing crematories in an IS zoning district, a fact not relevant to determining whether the crematory is an expansion of Plaintiff's funeral home business.

In their reply brief, Defendants mention for the first time the issue of the Trial Court's grant of attorney fees to BMC. Defendants argue that they were not required to raise this issue on appeal because BMC would not be entitled to attorney fees if we reverse the Trial Court's decision because BMC would no longer be a "prevailing party" entitled to an award of attorney fees pursuant to Tenn. Code Ann. § 29-37-104. As we are affirming the Trial Court's ruling, this argument is moot.

BMC has requested an award of its attorney fees and costs incurred during this appeal pursuant to the Equal Access to Justice Act, Tenn. Code Ann. § 29-37-101, *et seq.* ("the Act"). The purpose of the Act is to "offer small business an opportunity for adequate representation in any administrative hearing involving the operation of such business and, where necessary, in the resulting appeal process." Tenn. Code Ann. § 29-37-102. The Act provides, in limited circumstances, for an award of up to $10,000 for attorney fees and reasonable expenses incurred by a small business which is the prevailing party in a lawsuit against a government entity. Tenn. Code Ann. § 29-37-104. Our Supreme Court has held that the $10,000 limit set forth in the Act applies separately to each stage of litigation. *State v. Thompson*, 197 S.W.3d 685, 692 (Tenn. 2006). Therefore, we may award BMC its costs on appeal, regardless of the fact that the Trial Court already has awarded BMC $10,000 in attorney fees and costs. Because BMC has met the requirements of the Act and has prevailed on appeal, we award BMC its reasonable attorney fees and costs on appeal to a maximum of $10,000. We remand this matter to the Trial Court for a determination of the proper amount of attorney fees and costs to be awarded to BMC for these appellate expenses.

### III. Conclusion

After careful review, we find no error with the Trial Court's order reversing the Board's decision and ordering Defendants to allow BMC to establish a crematory, as requested, on its property. Therefore, we affirm. We also hold that BMC is entitled to its reasonable attorney fees and costs incurred during this appeal, not to exceed $10,000, pursuant to the Equal Access to Justice Act, Tenn. Code Ann. § 29-37-101, *et seq*. We remand to the Trial Court for a determination of the proper amount of attorney fees and costs to be awarded to BMC and for collection of costs below. Costs on appeal are taxed against the Appellants, City of Mt. Juliet; City of Mt. Juliet Board of Zoning Appeals; and Bryan Grassmeyer, Jackie Heatherly, Roger Morse, Larry Searcy, and Alfred H. Williams serving in their capacity as members of the City of Mt. Juliet Board of Zoning Appeals.

_____

D. MICHAEL SWINEY,  JUDGE