MAY, et al. *v.* UPTON

No. 40798 May 5, 1958 102 So. 2d 339

*Robert D. Everitt,* Ruleville, for appellants.

*J. W. Walker*, Mendenhall, for appellee.

ETHRIDGE, J.

Appellants, Mrs. J. R. May and three others, sought to enjoin the construction by appellee Howard O. Upton of an undertaking and embalming establishment, a funeral home, in the Town of Mendenhall. The Chancery Court of Simpson County denied the injunction. The question is whether the chancellor's finding of fact, that the locality in which the proposed funeral home will be constructed is commercial and not essentially residential in character, is supported by the evidence. We think it is.

Mendenhall has a population of about 2,000 persons. The center of the town is the courthouse and courthouse square. Running north and south from the center of courthouse square is Main Street. Running east and west, north of courthouse square, is Pine Street. Immediately northeast of the intersection of Main and Pine Streets is Block 15 of the town. The chancellor found, and the evidence shows, that each and every building now located within Block 15 is used for commercial purposes, with the exception of a former residence located in Lot 1 of said block, which is in the northwest corner thereof. This residence has been used for the past several years as residential rental property. Lot 1 is owned by appel-

lee Upton. He proposes to construct on it a funeral home. The other buildings in the block are a National Guard Armory, a medical clinic, a Welfare Department office building, and on the southeast side is the funeral home now being operated by defendant. The Town of Mendenhall has no zoning ordinance.

On the west side of Main Street, bounded on the south by Pine Street, is Block 14. The three lots of Block 14 facing Main Street to the east are occupied as residences, some of which are rental property. The southwest corner of Block 14 is occupied by the county jail. Mr. and Mrs. Paul Belding, appellants, live in their home on the northeast corner of Block 14, across the street from the National Guard Armory, and Lot 1, Block 15, upon which appellee proposes to construct his funeral home. Appellants Mr. and Mrs. J. R. May live on Lot 1, Block 13, which is situated to the north of appellee's property across Simpson Street, which traverses Main Street and runs east and west. The block to the north and west of the property in question is essentially residential property, and the three blocks north of commercial Block 15 are essentially residential, being an old and established residential area of Mendenhall. In brief, appellee proposes to construct his funeral home upon Lot 1, Block 15, in its northwest corner. Every building on that block is used for commercial purposes, with the exception of an old home, which Upton has been renting, located upon Lot 1. Two of appellants live across Main Street, west of Lot 1, and two of them across Simpson Street to the north of appellee's property. North of Simpson Street is essentially a residential area.

The chancery court concluded that the entirety of Block 15 is a commercial area; that appellee's present funeral home is located in the southeast corner of the block; that to enjoin defendant from the construction of a commercial building upon commercial property would deprive him of the free use and enjoyment of his property upon

the mere apprehension or fears of complainants; and that the strong preponderance of the evidence was in favor of the defendant. Appellants' evidence did not show that their property values would be diminished, but on the contrary testimony offered by appellee reflected that, in this particular part of the town, the appellee's present funeral home has not decreased property values, and has not disturbed homeowners near his present funeral home in the enjoyment of their properties. The proposed new structure on the northwest corner of Block 15 has been planned by an architect, will be attractive and sanitary, and is designed not to interfere with neighbors to the north and west of the funeral home.

 █ Two different rules have developed in the United States concerning undertaking establishments as nuisances. The minority rule holds that, before the establishment of an undertaking business in a residential area can be said to be a nuisance, there must be a substantial invasion of the adjoining properties by inordinate noises, substantial danger of the spread of diseases and escaping noxious odors, etc. On the other hand, the majority rule, adopted by Mississippi, holds that, if an undertaking establishment in a purely or essentially residential section causes, from its normal operations, depressing feelings to families in the immediate neighborhood and is a constant reminder of death, appreciably impairs their happiness and weakens their powers of resistance, and depreciates the value of their properties, such an establishment constitutes a nuisance. Fraser, et al. v. Fred Parker Funeral Home, 201 S. C. 88, 21 S. E. 2d 577 (1942); Annotation, 39 A. L. R. 1001 (1955); 54 Am. Jur., Undertakers and Embalmers, Section 7. Closely related to the issues raised by the majority rule are the questions involved in this case: What constitutes an essentially residential area, and the effect of such a locality upon a contiguous business block upon which the funeral home is to be constructed.

There are three Mississippi cases involving suits to enjoin the construction of funeral homes in residential areas. In all of them injunctions were issued. Williams v. Montgomery, 184 Miss. 547, 186 So. 302 (1939), pertained to a funeral home in an exclusively residential district in Greenwood. The evidence reflected that the business would decrease property values and have a depressing effect on the average, normal person. Affirming an injunction, it was noted that the Court was not dealing with a funeral home "located on a street already being used for conducting commercial enterprises."

In Davis v. Holmes, 189 Miss. 554, 198 So. 25 (1940), an injunction issued by the chancery court was also affirmed. The locality proposed for the funeral home in McComb was not exclusively residential, but "essentially residential in character." In the seven blocks surrounding the block on which complainants' residences were located, there was only one commercial property, a small combination grocery store and filling station. The block on which the two residences of complainants were situated contained a small grocery store and a delicatessen shop; otherwise the entire area of eight blocks was wholly residential.

In Smith v. Fairchild, 193 Miss. 536, 10 So. 2d 172 (1942), the chancery court denied the injunction, but on appeal it was reversed and the injunction issued. Here again the locality in which the funeral home was located was essentially but not exclusively residential in nature. The funeral home was located three blocks north of a railroad intersecting Main Street, which runs north and south in Hattiesburg. South of the railroad was a business section. North of it for about one-half mile there were only private residences, except a church, ice plant and a gas station, which were opposite the funeral home. In other words, with three isolated exceptions the entire area, beginning three blocks south of the funeral home, was residential. The chancellor erroneously concluded

that the existence of the ice plant and the gas station on isolated lots in this residential area deprived it of an "exclusive" residential character, and therefore complainants were not entitled to an injunction. This Court observed that the area was "essentially residential" and the injunction should be issued. It was said: "A residential section might embrace a much less area. The question is comparative and relative. The extent of the territory is only one factor. The number, kind, value and locations of the structures therein, the uses to which the territory is adapted, and all the surrounding facts and circumstances are to be considered. No hard and fast rule can be laid down. Each case must depend upon its own facts."

■■ ■ In summary, it is apparent that the Williams, Davis and Smith cases do not control the present issue. However, deducible from them is the conclusion that property owners are entitled to protection from the construction of a funeral home if they live in an exclusively or essentially residential area. But each case must depend upon its own facts. 66 C. J. S., Nuisances, Section 128, p. 924; Section 127, p. 919; Section 72. ■■ ■ The finding of the trial court should be affirmed if correct in law and supported by substantial evidence. It is undisputed that Block 15 upon which appellee proposes to construct his funeral home is commercial in nature. Appellee's present funeral home is on the southeast corner of that block, and he proposes to build a new one in the northwest corner, about 300 feet away. Unfortunately complainants' properties are on the edge of an essentially residential area but immediately adjacent to an exclusively commercial area. The chancellor was warranted in finding that the entirety of Block 15 is commercial in nature. Appellee proposes to operate his business in a proper manner. The fact that the homes of appellants across the streets to the north and west of the proposed location constitute the point of beginning of an essen-

tially residential area cannot deprive the appellee of his right to erect his funeral home on a commercial block across the street. See Annotation, Undertaking Establishment as A Nuisance, 39 A. L. R. 2d 1000-1031 (1955). I have not found any case involving this precise question, where a commercial block upon which the funeral home is located adjoins the beginning of an essentially residential area in which complainants live, but the cases denying injunctions where the locality is in transition from a residential to a commercial area are analogous. 39 A. L. R. 2d 1027.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.