377 So.2d 609 (1979)
Mary Ryan TRAVIS et al.
v.
Ethan E. MOORE.
No. 51538.
Supreme Court of Mississippi.
December 5, 1979.
William Harold Jones, R.M. Sullivan, Petal, for appellants.
Pope & Van Slyke, Moran M. Pope, Jr., Hattiesburg, for appellee.
Before ROBERTSON, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Mary Ryan Travis, Riley G. Jackson, Betty C. Smith, Thomas M. Baylis, Lonnie L. Lee, Sr. and Nedra Marjorie Lee, filed a bill of complaint in the Chancery Court of Forrest County seeking an injunction to prohibit Ethan E. Moore from constructing a funeral home in the vicinity of their properties. Chancellor Howard L. Patterson, Jr., entered a final decree denying the injunction and dismissing the bill of complaint. The complainants appeal and assign twelve *610 (12) errors in the trial below, but have briefed and argued only six (6) of said assigned errors.
The appellee, Ethan E. Moore, purchased a parcel of property four hundred fifty (450) feet east and west by four hundred (400) feet north and south, adjacent to the north boundary of Mississippi State Highway # 42, for the purpose of constructing a funeral home. The west one hundred fifty (150) feet of said parcel of land was covered with trees and underbrush while the remaining area was open land. Mary Ryan Travis and her husband own and occupy a dwelling house four hundred six (406) feet west of the proposed funeral home building (adjacent to it). Riley G. Jackson and his wife own and occupy a dwelling house three hundred ninety-four (394) feet east of the proposed funeral home (with one dwelling house between them). Betty C. Smith and her husband own and occupy a dwelling house twelve hundred fifty-five (1255) feet west of the said proposed building (adjacent to the Travis home), Thomas M. Baylis owns and occupies a dwelling house directly across said Highway # 42 a distance of three hundred seventy-three (373) feet from the proposed building, and Lonnie W. Lee, Sr., and wife, Nedra Marjorie Lee, own and occupy a dwelling house directly across said Highway # 42 and approximately three hundred seventy-three (373) feet from the proposed building. Lee and Baylis reside in Forrest Lake Subdivision and occupy Lots 1 and 2 thereof, respectively. Craig Raney, son of appellee's grantor, W.C. Raney, purchased a dwelling house from his father, which adjoins the proposed funeral home site on the east (between it and the Jacksons), and his home is one hundred eighty-five (185) feet from the proposed building. He had no objection to the construction of the funeral home.
Appellee's funeral home property is situated 0.7 mile east of the Petal city limits. On the south side of Mississippi State Highway # 42 are situated Forrest Lake Subdivision, which lies directly south of and across Highway # 42 from the funeral home site, and Forrest Acres Subdivision, which lies approximately halfway between the Petal city limits and the funeral home site on the south side and adjacent to Mississippi Highway # 42. They are commonly referred to as Castle Manor.
The area for a distance of approximately eight hundred (800) feet east of the funeral home property and for more than twelve hundred fifty-five (1255) feet west of said funeral home property is fairly well built up with dwelling houses, while to the north of said houses, the land is generally agricultural and timberland. Adjoining the property of Betty C. Smith on the west is a small nightclub which is usually open on weekends. A construction company and sawmill are operated in the area though not in the vicinity of the funeral home site. The chancellor, at the request of the attorneys for the parties, went to the area with said attorneys, drove to the funeral home site, and inspected it and the vicinity surrounding same.
Although six (6) assignments of error are argued, the principal question is: Did the lower court commit manifest error in its finding of fact, or if not, did the lower court misapply the law to the facts?
There have been five (5) cases decided in this jurisdiction dealing with the subject of injunctions against construction of funeral homes in residential areas. Those cases have been discussed by the parties in their briefs. In May, et al. v. Upton, 233 Miss. 447, 102 So.2d 339 (1958), the Court affirmed the chancellor in denying an injunction. However, the case is distinguished from the present case in that Block 15 was entirely commercial except for Lot 1, rented by Upton and upon which he proposed to construct a funeral home. In discussing the applicable law, the Court said:
"Two different rules have developed in the United States concerning undertaking establishments as nuisances. The minority rule holds that, before the establishment of an undertaking business in a residential area can be said to be a nuisance, there must be a substantial invasion of the adjoining properties by inordinate noises, substantial danger of the *611 spread of diseases and escaping noxious odors, etc. On the other hand, the majority rule, adopted by Mississippi, holds that, if an undertaking establishment in a purely or essentially residential section causes, from its normal operations, depressing feelings to families in the immediate neighborhood and is a constant reminder of death, appreciably impairs their happiness and weakens their powers of resistance, and depreciates the value of their properties, such an establishment constitutes a nuisance. Fraser, et al. v. Fred Parker Funeral Home, 201 S.C. 88, 21 S.E.2d 577 (1942); Annotation, 39 A.L.R. 1001 (1955); 54 Am.Jur., Undertakers and Embalmers, Section 7.
* * * * * *
There are three Mississippi cases involving suits to enjoin the construction of funeral homes in residential areas. In all of them injunctions were issued. Williams v. Montgomery, 184 Miss. 547, 186 So. 302, 305 (1939), pertained to a funeral home in an exclusively residential district in Greenwood. The evidence reflected that the business would decrease property values and have a depressing effect on the average, normal person. Affirming an injunction, it was noted that the Court was not dealing with a funeral home `located on a street already being used for conducting commercial enterprises.'
In Davis v. Holmes, 189 Miss. 554, 198 So. 25 (1940), an injunction issued by the chancery court was also affirmed. The locality proposed for the funeral home in McComb was not exclusively residential, but `essentially residential in character.' In the seven blocks surrounding the block on which complainants' residences were located, there was only one commercial property, a small combination grocery store and filling station. The block on which the two residences of complainants were situated contained a small grocery store and a delicatessen shop; otherwise the entire area of eight blocks was wholly residential.
In Smith v. Fairchild, 193 Miss. 536, 10 So.2d 172 (1942), the chancery court denied the injunction, but on appeal it was reversed and the injunction issued. Here again the locality in which the funeral home was located was essentially but not exclusively residential in nature. The funeral home was located three blocks north of a railroad intersecting Main Street, which runs north and south in Hattiesburg. South of the railroad was a business section. North of it for about one-half mile there were only private residences, except a church, ice plant and a gas station, which were opposite the funeral home. In other words, with three isolated exceptions the entire area, beginning three blocks south of the funeral home, was residential. The chancellor erroneously concluded that the existence of the ice plant and the gas station on isolated lots in this residential area deprived it of an `exclusive' residential character, and therefore complainants were not entitled to an injunction. This Court observed that the area was `essentially residential' and the injunction should be issued. It was said: `A residential section might embrace a much less area. The question is comparative and relative. The extent of the territory is only one factor. The number, kind, value and locations of the structures therein, the uses to which the territory is adapted, and all the surrounding facts and circumstances are to be considered. No hard and fast rule can be laid down. Each case must depend upon its own facts.'
In summary, it is apparent that the Williams, Davis and Smith cases do not control the present issue. However, deducible from them is the conclusion that property owners are entitled to protection from the construction of a funeral home if they live in an exclusively or essentially residential area. But each case must depend upon its own facts. 66 C.J.S., Nuisances, Section 128, p. 924; Section 127, p. 919; Section 72." 233 Miss. at 451-452, 102 So.2d at 340-341.
For an area to be essentially residential, it is not necessary that there be a large or medium-large residential area. A small *612 area may be essentially residential. Such an area may consist of residences along one street or highway, with timber or open lands behind, as well as residences situated in one block. If a funeral home is constructed in a residential block of a city, where no zoning ordinance or restrictive covenant is in effect, probably those persons most affected by it would be the ones residing immediately adjacent to the funeral home. Reason dictates that a homeowner one-half block or one block away from a funeral home would not be affected like those next to, or across the street from it. The distance from a residence to a funeral home is of important significance.
Things to be considered in determining whether or not a funeral home constitutes a nuisance or whether the value of the homes was diminished by construction of the funeral home and the effect the funeral home has on the homeowners.
The evidence here is conflicting as to whether or not property values will be adversely affected by construction of the funeral home. Witnesses for appellants were of the opinion that values would decrease, while witnesses for appellee were of the opinion that the values would not be affected and might be increased from the standpoint of commercialism. The chancellor so found. However, the probability of property increasing because of commercialism does not have weight when the residential area is destroyed by the commercial enterprises.
The appellants testified that the operation of a funeral home on the proposed site would result in depressed feelings to them and their families and their testimony followed the rule as to a nuisance stated in May, supra. In arriving at his decision, the chancellor considered that the area where appellee proposed to construct the funeral home was not affected by zoning statutes or restrictive covenants. He also considered the fact, and found, that the proposed construction would not create noises, unusual odors, slamming of doors, the ringing of telephones, unusual and unnecessary automobile noises, the display of caskets and other burial paraphernalia and would not be conducted in an unsanitary manner. In so finding, the chancellor followed the minority rule expressed in May, supra, rather than the majority rule followed by the State of Mississippi. The chancellor found that the only injury complained of by the appellants was that the conduct of the funeral home business at the proposed site would have a depressing effect upon them and their families by reason of its frequent reminders of death and that such was not sufficient to deny the construction of a lawful and necessary business, since he interpreted the law to require that the injury complained of be physical, as distinguished from purely imaginative. The learned chancellor misinterpreted the Mississippi rule as stated in May, supra, which is stated above and relates to mental depression and anxiety rather than physical injury.
We hold that appellants reside in an essentially residential neighborhood and that they are entitled to be protected in the enjoyment of their property rights without the intrusion of a funeral home business in their midst. The chancellor erroneously applied the law to the facts of the case and erred in denying the injunction and dismissing the bill of complaint. Therefore, the judgment of the lower court is reversed and judgment is rendered here for appellants.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.