# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 13, 2015 Session

## NAN E. SCOTT, ET. AL. v. THE CITY OF KNOXVILLE, ET. AL.

**Appeal from the Chancery Court for Knox County**
**No. 1827332     Hon. Michael W. Moyers, Chancellor**

---

**No. E2014-01589-COA-R3-CV-FILED-JUNE 8, 2015**

---

This is an appeal from a judgment in a certiorari review action where the trial court upheld the Knoxville City Council's ruling in favor of the respondents. The Knoxville City Council found that a proposed expansion project involving the construction of a crematory for incinerating human bodies was permitted as an accessory use for the existing funeral home. The trial court found that the Knoxville City Council had not exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. The petitioners appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Wendell K. Hall, Knoxville, Tennessee, for the appellants, Nan E. Scott, Bonnie H. Peters, Edwin M. Scott, Jr., Sandra K. Simpson, Robert A. Davis, Carol B. Davis, Charlotte M. Davis, Jamie S. Rowe, B. Catherine Freels, Penelope L. Berridge, Fred R. Arrington, III, Janet C. MacFarlane, Leslie A. Feulner, Randall J. Kurth, and Kent W. Nicholson.

Crista M. Cuccaro, Knoxville, Tennessee, for the appellee, the City of Knoxville.

Robert B. Frost, Jr., Knoxville, Tennessee, for the appellee, the City Council of Knoxville.

Arthur G. Seymour, Jr. and Benjamin C. Mullins, Knoxville, Tennessee, for the appellee, Evergreen Services of Tennessee, LLC d/b/a Gentry-Griffey Funeral Home.

# OPINION

## I.        BACKGROUND

In July 2010, Evergreen Services of Tennessee, LLC d/b/a Gentry-Griffey Funeral Home ("Gentry-Griffey") began the process of applying for a building permit to add a crematory[1] to its existing funeral home in Fountain City, Tennessee.  Gentry-Griffey is located in an O-1 zone, an area that is designated for professional and business offices and related activities.  On August 23, 2011, the City of Knoxville Building Inspections and Plans Review Department ("the City") issued the requested permit to Gentry-Griffey to construct the crematory as an accessory use of the funeral home establishment.

In December 2011, several Fountain City residents ("Petitioners") appealed the issuance of the permit to the City's Board of Zoning Appeals ("BZA").  The BZA voted unanimously to deny the appeal.  Petitioners then appealed to the Knoxville City Council ("the City Council") pursuant to Article VII, Section 6 of the Knoxville Zoning Code ("the Code"), which provides,

> Any person, firm or corporation aggrieved by any decision of the metropolitan planning commission or the board of zoning appeals may petition the city council to consider the same.
>
> * * *
>
> The city council shall consider de novo in public hearing and may affirm, modify, impose restrictions as provided in article VII, section 5 or overrule the action of the planning commission or board of zoning appeals.

Petitioners stated their reason for the appeal as follows:

> Determination was arbitrary and capricious as evidenced by area funeral homes who had previously applied and were denied, and conversations with a City employee; references from the Zoning Ordinance of Knoxville show the determination was arbitrary and capricious including but not limited to, Article II Definitions "accessory use," Article IV Section 2.2.1; Article IV Section 2.3.2 and 2.3.3; Article V Section 1 Performance Standards B.2, 3 and 4; and Article VII Administration and Enforcement Section 1.C.a and other reports regarding cremation.

---

[1] Tennessee Code Annotated section 62-5-101(4) defines "crematory" as "the building or portion of a building that houses one (1) or more cremation chambers used for the reduction of body parts or bodies of deceased persons to cremated remains and the holding facility."

A hearing was held at the monthly meeting on February 21, 2012. The City Council entertained presentations with accompanying exhibits from several speakers on both sides of the issue. The City Council even extended the time limitations to allow adequate argument. Jamie Rowe, a Fountain City resident, feared that the crematory would become the principal use of the business. She noted that Gentry-Griffey performed 70 funerals last year but that the permit allowed the cremation chamber to operate for 16 hours a day, 7 days a week, thereby permitting 1,400 cremations per year. She was also concerned that the cremation chamber would affect the air quality and omit smoke and odor as evidenced by the Blount County crematory that emitted visible smoke and an unpleasant odor. She asserted that the proposed crematory would emit mercury at a rate of four grams of vaporized mercury per cremation.

Nan Scott, M.D., a Fountain City resident, argued that the construction of a crematory did not qualify as an accessory use of the existing funeral home when Gentry-Griffey was adding the crematory to increase business and expected to advertise its crematory services to the surrounding areas. She claimed that an I-4 zone was the only zoning classification that permitted the use of a crematory as evidenced by several other businesses that had requested to construct crematories and were not granted permits. She stated that the use of a cremation chamber in an I-3 zone was even expressly prohibited. She claimed that the approval of a crematory "in an O-1 zone was arbitrary and capricious," that the building inspector made an "arbitrary and capricious decision," and that the administrative decision was "arbitrary and capricious."

Catherine Freels, a Fountain City resident, argued that "the City did not conduct a proper review" in determining whether the requested use was permitted and that the City also failed to document how it came to the decision "to allow the crematory in an O-1 zone." She claimed that the review made by the City was "seriously flawed and [did] not support the City's determination." Ms. Freels stated that the "City's action or inaction resulted in an arbitrary and capricious decision unsupported by the evidence."

Arthur Seymour, who spoke on behalf of Gentry-Griffey, stated that the City Council was tasked with "sitting in judgment of whether or not this building permit was properly issued." He argued that the City's decision to issue the permit was proper as an accessory use of the existing funeral home. He noted that the Tennessee Court of Appeals has held that funeral homes and crematories are not viewed as separate industries but are viewed as "complimentary services offered by the funeral industry." He further claimed that since the issuance of the initial permit, Gentry-Griffey had acquired a vested right to operate the crematory as evidenced by the substantial expenditures made to construct the crematory in reliance upon the permit. He stated that the City had also issued a certificate of occupancy after performing several inspections of

the completed addition. He noted that the air quality permit had not yet been issued but that any emissions would be regulated by the Knox County Department of Air Quality Management.

In rebuttal, Ms. Freels stated that the permit was issued based upon claims that the crematory would be an accessory use but that the residents were concerned that the crematory would eventually become the primary use of the funeral home. Relative to vested rights, she argued that Gentry-Griffey obtained the certificate of occupancy while the appeal was underway. She claimed that Gentry-Griffey continued to fund the construction even though it had knowledge that the residents intended to appeal the issuance of the permit as early as November 2011. She related that despite claims to the contrary, Gentry-Griffey bought a used cremation chamber that cost approximately $36,000 and had also built two handicapped bathrooms, a kitchen, a viewing area and other improvements that were unrelated to the crematory.

Following arguments, the City Council engaged in deliberations. Councilman Nick Della Volpe expressed concern that the issuance of the permit was "handled like a routine matter with no consultation." He related that the existing funeral establishment was perfectly acceptable for an O-1 zone in the city when the facilities were used as a place to allow the residents to grieve and share love and condolences for friends and family. He related that prior to the issuance of the permit, those electing cremation services were sent to an industrial park in Rockford, Tennessee, where the cremation was performed at a facility that was tasked with performing cremations. He related that the crematory was not subordinate to the principal use of the establishment and did not contribute to the comfort, convenience or necessity of users who relied upon the principal use when Gentry-Griffey was advertising its cremation services to other counties. Relative to whether Gentry-Griffey had obtained a vested right to operate the crematory, he asserted that Gentry-Griffey spent approximately $30,000 prior to the issuance of the permit and another $36,799 following the issuance of the permit. He related that Gentry-Griffey continued to fund its efforts even after it was aware that the residents of Fountain City objected to the issuance of the permit. He noted that the residents learned of the addition in October 2011, held a meeting in November 2011, and then appealed the issuance of the permit in December 2011.

At the request of the City Council, Anita Cash, the Zoning Coordinator for the City, spoke on behalf of the City. She explained that Gentry-Griffey had not requested a free-standing crematory but simply desired to add a crematory for its patrons. She related that she and other members of the office researched the issue and determined that the crematory was an appropriate accessory use of the principal business. She asserted that she was never asked for documentation concerning the decision-making process.

Councilman Mark Campen stated that he believed the City erred in issuing the permit and that the BZA erred in denying the appeal. He believed the issue should have been looked at closer. He expressed concern regarding the emissions and stated that an O-1 zone was a "very poor place for this kind of facility." He related that the increased operating hours also caused concern. He opined that the City Council would be forced to approve other businesses that requested to construct crematories or their refusal to grant like requests would promote a monopoly for crematory services.

Councilman Marshall Stair stated that the issue before the City Council was whether the permit was granted "in an arbitrary and capricious manner." He noted a recent case from the appellate court where the trial court found that the decision to deny a permit in a similar case was found to be arbitrary and capricious. He related that if the City Council granted the appeal it would be reversed by the trial court.

Councilman Duane Grieve stated that the issue before the City Council was whether the building officials made the right decision. He suggested that the parties come to an agreement whereby Gentry-Griffey allows additional air quality testing. He related that the Ensafe report submitted by Petitioners reflected that there were 45 human crematories in the State of Tennessee and that all but 6 were located in residential or commercial areas where people live and work. He stated that despite the location of the crematories, there had been very few complaints from the surrounding public. He asked Mr. Seymour if Gentry-Griffey would come to an agreement with the residents of Fountain City regarding the concerns related to air pollution.

Mr. Seymour responded by stating that Gentry-Griffey would be amenable to inspections at any time and that the unit was also self-monitoring. He related that the public could peruse the unit's records upon request. He agreed that mercury was emitted from dental fillings in bodies that were cremated. He opined that mercury emissions would eventually decrease because dentists had largely stopped using the dental fillings that emitted mercury upon burning. He related that mercury emissions would only be an issue if the crematory ran non-stop for an entire year with each body having 17 or more dental fillings. Randy Kerr confirmed that mercury testing could be performed by consulting firms.

Councilman Finbarr Saunders asked the City's attorney, Charles Swanson, if proper procedures had been followed in issuing the permit. Mr. Swanson answered in the affirmative. Likewise, Councilman Saunders asked Robert B. Frost, Jr., the City Council's attorney, what the City Council's role was relative to the BZA decision. Mr. Frost responded by stating that the "City Council needs to decide whether the City Building Official[']s decision was correct based on the information and factors that he reviewed and the information presented at the time to support his decision." He related

that the City Council should review the record from the BZA hearing and the statements and evidence presented at the current hearing.

Councilman George Wallace made a motion to postpone the decision to allow the parties to come to an agreement. His motion was not seconded. Mr. Seymour stated that Gentry-Griffey sought a prompt resolution because they had expended approximately $400,000 in reliance upon the permit.

Councilwoman Brenda Palmer stated that the appeal should be denied if the City Council found that the inspector followed the proper procedure.

Vice Mayor Nick Pavlis supported the appeal on the basis that the permit was likely not issued in an appropriate manner.

Councilman Della Volpe stated that those involved never really considered the impact to the community or the way crematories operated but simply discussed the construction aspect of the permit request, namely whether the foundations were adequate and whether the plans anticipated building within the proper boundaries. He spoke extensively concerning the air pollution aspect of the issue and finished by stating, "We have to search our own conscience, look at this evidence and try to make a decision."

Following some discussion, City Council attorney Frost then stated, "This is not a legislative decision; it's an administrative decision about whether or not the decision of the Building Official that this use was an accessory use to a funeral home was correct. I've heard Councilman Della Volpe again and once again I appreciate his passion on this issue, but this is not a question of whether or not a crematory should be permitted." Thereafter, Councilman Della Volpe moved to approve the appeal on the basis that the permit "was arbitrar[ily], capricious[ly], or illegally or improperly granted." The motion failed by a 5-4 vote. Councilmen Campen, Della Volpe, and Brown and Vice Mayor Pavlis voted in favor, while Councilmen Grieve, Saunders, Stair, and Wallace and Councilwoman Palmer voted against.

Petitioners then filed a petition for a writ of certiorari with the Knox County Chancery Court. Petitioners named the City and the City Council (collectively "Respondents") as respondents. Gentry-Griffey filed a motion to intervene, which was granted. Petitioners argued that the City Council should have considered the issuance of the permit under a de novo standard of review but that the City Council erroneously considered whether the City acted in an illegal, arbitrary, and capricious manner in issuing the permit. The court disagreed and found that the City Council ultimately applied the appropriate de novo standard of review as evidenced by its consideration of additional evidence in the form of presentations with accompanying exhibits. The court

dismissed the petition for writ of certiorari, holding that the City Council had not exceeded its jurisdiction, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.    Whether the trial court abused its discretion denying the petition for a writ of certiorari.

Gentry-Griffey raised an issue on appeal for our consideration that we restate as follows

B.    Whether Gentry-Griffey held a vested right to operate the crematory.

## III.    STANDARD OF REVIEW

This action is brought pursuant to Tennessee Code Annotated section 27-8-101, et seq., which governs the extraordinary remedy of common law writ of certiorari, and section 27-9-101 et seq., which provides procedures for review by writ of certiorari of decisions by boards and commissions.

An action by a board of zoning appeals or the city council is an administrative or quasi-judicial act rather than a legislative act. *See McCallen v. City of Memphis*, 786 S.W.2d 633, 638-39 (Tenn. 1990). The proper method of judicial review of such actions is through the common law writ of certiorari. Tenn. Code Ann. § 27-9-101, et seq.; *McCallen*, 786 S.W.2d at 639. In *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005), we explained that "the primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the trial court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue de novo as the initial decision maker." Furthermore,

Reviewing courts may grant relief only when the board or agency whose decision is being reviewed has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently.

Review under a common-law writ of certiorari does not extend to a redetermination of the facts found by the board or agency whose decision is

being reviewed. The courts may not (1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.

*Leonard Plating Co. v. Metro. Gov't of Nashville and Davidson Cnty.*, 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (internal citations and footnotes omitted).

"The issue of whether there is sufficient evidence to support a zoning decision is a question of law." *BMC Enters., Inc. v. City of Mt. Juliet*, 273 S.W.3d 619, 624 (Tenn. Ct. App. 2008) (citing *Wilson County Youth Emergency Shelter, Inc. v. Wilson Cnty.*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999)). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006). However,

[a] common-law writ of certiorari is not available as a matter of right. The petition for a writ is addressed to the trial court's discretion. Accordingly, appellate courts must review a trial court's decision either to grant or to deny a petition for common-law writ of certiorari using the "abuse of discretion" standard of review.

*Heyne v. Nashville Bd. of Pub. Educ.*, 380, S.W.3d 715, 730 (Tenn. 2012) (internal citations omitted). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV. DISCUSSION

### A.

Petitioners assert that the City Council acted illegally, arbitrarily, or fraudulently by reviewing the issuance of the permit under the wrong standard of review. Petitioners claim that the City Council should have conducted a de novo hearing but that consideration of the issuance of the permit was limited to a determination of whether the City acted in an illegal, arbitrary, or fraudulent manner in granting the permit request. Petitioners further assert that the record did not contain any material evidence to support the decision. Respondents and Gentry-Griffey claim that the City Council considered the

issue under the appropriate standard of review as evidenced by the fact that Petitioners were afforded a full and fair hearing by the City Council. Citing *BMC Enterprises*, Respondents and Grentry-Griffey also claim that the record contained material evidence to support the decision.

"[D]e novo judicial review" is defined by Black's Law Dictionary, 9th ed., as

[a] court's nondeferential review of an administrative decision, usu. through a review of the administrative record plus any additional evidence the parties present.

We agree that the meeting minutes reflect confusion regarding the appropriate standard of review. The meeting minutes also reflect that the City Council considered the administrative record and additional evidence presented by the parties. Indeed, the City Council considered numerous exhibits, e.g., environmental reports, newspaper articles, photographs, and even allowed the parties additional time to present their arguments. The proof presented to the City Council was not limited in any manner. The discussion between the City Council members reflects that they considered the exhibits presented and that some even visited an area crematory to aid in the decision-making process. With these considerations in mind, we agree with the trial court that the City Council applied the appropriate standard of review.

Petitioners next assert that the record did not contain material evidence to support the decision as evidenced by the fact that Gentry-Griffey is located in an O-1 zone. Petitioners note that the addition of a crematory may not be considered an accessory use in an O-1 zone when crematories are limited to the I-4 heavy industrial district in the City and when similar requests to construct a crematory were denied by the City due to the zoning classification of the proposed location.

Article IV Section 2 of the Code lists the "[d]istillation of bones" as a use permitted on review in the I-4 heavy industrial district. However, Article IV, Section 2 of the Code also provides as follows:

*Uses permitted.* The following uses shall be permitted in the O-1 office, medical, and related services district:

* * *

1. Undertaking establishments and funeral homes.

* * *

11.    Accessory buildings and uses permitted customarily incidental and subordinate to permitted or permissible uses and structures.

While free-standing crematories may be limited to the I-4 heavy industrial district, the City may not limit Gentry-Griffey's right to further utilize its property for a use that is customarily incidental and subordinate to permitted or permissible uses and structures. Thus, the key issue is whether operation of the crematory is an accessory use of the existing property. *Cf. BMC Enterprises*, 273 S.W.3d at 625 (identifying the key issue in a similar case as whether operation of a crematory was "'an actual continuance and expansion of the activities' of the Funeral Home's business").

Article II of the Code defines an accessory use as follows:  "A use customarily incidental, appropriate, and subordinate in area, extent, and purpose to the principal use of land or buildings and located on the same lot therewith."  For further clarification, Article V, Section 4 of the Code, provides as follows:

A.  General Provisions.  Each permitted accessory use shall:

1.    Be customarily incidental to the principal use established on the same lot.
2.    Be subordinate to and serve such principal use.
3.    Be subordinate in area, extent and purpose to such principal use.
4.    Contribute to the comfort, convenience or necessity of users of such principal use.

The code does not include a definition of an undertaking establishment or a funeral home.  However, Tennessee Code Annotated section 62-5-101(7) defines a "funeral establishment" as

any business, whether a proprietorship, partnership, firm, association or corporation, engaged in arranging, directing or supervising funerals for profit or other benefit, the preparing of dead human bodies for burial, the disposition of dead human bodies, the provision or maintenance of place for the preparation for disposition, or for the care or disposition of human bodies[.]

In *BMC Enterprises*, a panel of this court stated,

- 10 -

It is undisputed that the function of a crematory is to dispose of dead human bodies. Thus, the General Assembly envisioned that a funeral establishment could include a funeral home and/or a crematory.

273 S.W.3d at 625. Tennessee Code Annotated section 62-5-101(6)(A)(i) defines "funeral directing" as the

Practice of directing or supervising funerals or the practice of preparing dead human bodies for burial by any means, other than by embalming, or the disposition of dead human bodies[.]

This court has held that the practice of funeral directing includes the operation of a crematory. *BMC Enters.*, 273 S.W.3d at 626. Thus, cremation services are customarily incidental to the operation of an undertaking establishment or funeral home.

Here, Gentry-Griffey is attempting to construct a crematory to provide cremation services as an expansion of the services already offered to its patrons. Following our review, we agree with the trial court that there was material evidence in the record to support the conclusion that the construction of the requested crematory was customarily incidental to the funeral home industry, subordinate to and subservient to the funeral home at issue, and subordinate in area, extent, and purpose to the funeral home at issue. The offering of cremation services would also contribute to the comfort, convenience, or necessity of Gentry-Griffey's funeral home patrons. With all of the above considerations in mind, we also agree that the crematory was an appropriate accessory use to the existing funeral home establishment and likewise conclude that the trial court did not abuse its discretion in denying the petition for a writ of certiorari.

B.

Gentry-Griffey argues on appeal that it held a vested right in the crematory addition as evidenced by the substantial expenditures made in reliance upon the permit. Having concluded that the trial court did not abuse its discretion in denying the petition, this issue is pretermitted. Additionally, this issue was not addressed by the trial court, likely as a result of its ruling that the record contained material evidence to support the conclusion that the crematory was an appropriate accessory use to the existing funeral home establishment and that the City Council had not exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently.

## V.   CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded to the trial court for further proceedings as may be necessary.  Costs of the appeal are taxed equally to the appellants, Nan E. Scott, Bonnie H. Peters, Edwin M. Scott, Jr., Sandra K. Simpson, Robert A. Davis, Carol B. Davis, Charlotte M. Davis, Jamie S. Rowe, B. Catherine Freels, Penelope L. Berridge, Fred R. Arrington, III, Janet C. MacFarlane, Leslie A. Feulner, Randall J. Kurth, and Kent W. Nicholson.


_____
JOHN W. McCLARTY, JUDGE